OPINION *Page 2 
{¶ 1} Plaintiffs/counter-defendants-appellants/cross-appellees Congress Lake Club, et al. (hereinafter "Congress Lake") appeal the March 12, 2007 Judgment Entry, entered by the Stark County Court of Common Pleas, which found in favor of defendants/counter-plaintiffs-appellees/cross-appellants Lenschen S. Witte, et al. (hereinafter "Lenschen Witte", "Lane Witte", and "Stacey Witte, individually; "the Wittes", collectively) on their counterclaims, and awarded damages in excess of one million dollars, following a jury trial.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Congress Lake is a private country club, which owns approximately 850 acres of real property in Hartville, Stark County, Ohio. The real property consists of lots surrounding a lake, a golf course, and country club facilities. Congress Lake leases the lots to its stockholding members, who are permitted to build or own homes on the lots. Prior to so building or occupying such homes, the stockholding member must execute a lease agreement between Congress Lake and said member. The lease agreement is for a term of fifteen (15) years and is automatically renewable for a succeeding fifteen (15) year period unless cancelled by the stockholding member prior to the expiration date of the lease.
 {¶ 3} The property at issue in this matter is located at 2 West Drive and is known as Lot No. 2. On December 14, 1981, Verlynn Witte, Lenschen Witte's then husband, entered into a lease agreement with Congress Lake for the subject property.[1] *Page 3 
Verlynn and Lenschen Witte then built a house on Lot No. 2. The lease agreement was recorded at the Stark County Recorder's Office on January 1, 1998, at Volume 3, Page 939.[2]
 {¶ 4} Verlynn and Lenschen Witte divorced in April, 1988. Pursuant to the terms of the divorce, Lenschen Witte was awarded the marital home. Via letter dated January 16, 1990, Congress Lake, through its Board of Directors, wrote Verlynn Witte, noting its understanding he and Lenschen Witte had divorced and Lenschen Witte was in possession of and residing in the home located at Lot No. 2. The Board informed Verlynn Witte because Lenschen Witte was not a stockholding member he was in violation of the lease agreement. The Board advised the Wittes the lease agreement was in jeopardy of being declared null and void unless Lenschen Witte became a stockholding member. Lenschen Witte became a social member of Congress Lake in June, 1990. However, she did not become a stockholding member of Congress Lake until June 6, 1995.
 {¶ 5} Verlynn Witte failed to transfer any of his rights in the property to Lenschen Witte. The Stark County Court of Common Pleas, Domestic Relations Division, issued an order "transferring any and all interest of the Defendant, Verlynn Witte, as Grantor, to the Plaintiff, Lenschen S. Witte, any and all right, title and interest which the Defendant, as Grantor, has in and to said lease, land and the improvements thereon, * * *." February 4, 1992 Judgment Order.
 {¶ 6} Sometime in or around December, 2001, after attempting, unsuccessfully, for one year to sell the residence at 2 West Drive, Lenschen Witte moved out of the *Page 4 
home. She, however, remained a stockholding member of Congress Lake. In late November, 2002, Lenschen Witte's membership account became delinquent. Via certified letter dated February 18, 2003, Congress Lake advised Lenschen Witte her account was past due in the amount of $1,784.85. Congress Lake further informed Lenschen Witte her membership would be suspended if her account balance was not paid.
 {¶ 7} Thereafter, on or about February 27, 2003, Lenschen Witte executed a general warranty deed purporting to transfer the subject real property to Lane Witte, her son, for the purchase price of $210,000.00. At the time of the transfer, Lane Witte was a member of Congress Lake, however, he was not a stockholding member. Lenschen Witte wrote a note to Congress Lake on March 3, 2003, tendering her resignation from Congress Lake, asking it to accept such, and indicating she had sold her residence to another member and would be transferring her stock. The Board did not accept the resignation because Lenschen Witte's membership account remained delinquent, she still held a leasehold interest in property owned by Congress Lake, and she had failed to transfer her lease to a stockholding member.
 {¶ 8} In a subsequent letter dated May 12, 2003, Lenschen Witted wrote the following to Congress Lake:
 {¶ 9} "Enclosed is my check for taxes, rent and operating expenses on my property, plus the charge for the guards. I will not be paying any more dues, or other charges-as I said for March, as you directed Loretta to inform me, even though the property was transferred on Feb. 28th. *Page 5 
 {¶ 10} "As for the lease, Lane [Witte] called the club and was told he could go in the next day and sign it. He took time off from the office the next morning, and went there, only to be informed he had to go to Mr. Zollinger's office. (This was before Loretta called me to explain that).
 {¶ 11} "Lane will make arrangements to take care of the lease, and stock transfer as soon as he has the time. ss// Lenschen Witte"
 {¶ 12} Congress Lake, in a letter dated June 18, 2003, advised Leschen Witte she remained responsible for all rent, taxes, and other expenses related to her occupancy of the leased premises and use of the club facilities until the lease was assigned. Congress Lake further informed her it refused to accept her resignation as the club rules prohibited a member from resigning as long as the member was a leaseholder of club property. Since Lenschen Witte had not transferred the subject property to a stockholding member, she remained a leaseholder.
 {¶ 13} In June of 2003, Lane Witte, who was not a stockholding member and who had not executed a new lease, moved into the subject property. Congress Lake sent a certified letter dated July 30, 2003, to Lenschen Witte informing her that her account was past due, and if she failed to bring her account current, she would be suspended from the club. On August 22, 2003, counsel for Congress Lake also advised Lenschen Witte of the delinquent account, and made a third demand for payment. Counsel informed her if she failed to pay the sums due and owing, Congress Lake would exercise its right of forfeiture under the lease agreement.
 {¶ 14} The Board voted at its September 16, 2003 meeting, to suspend Lenschen Witte's membership as she had failed to bring her account current. On *Page 6 
October 15, 2003, Congress Lake served a three day notice on "Lenschen Witte and all other tenants in possession of the premises." Congress Lake filed a complaint in Canton Municipal Court, for forcible entry and detainer, alleging Lenschen Witte was in breach of the terms and conditions of the lease. Congress Lake specifically alleged Lenschen Witte had failed to vacate the premises and "continue[d] to unlawfully and forcibly detain the Plaintiff from the premises and improvements thereon * * *" and she had materially breached the terms of the lease by failing to pay dues, assessments, real estate taxes and other operating expenses since April 16, 2003. Lenschen Witte filed an answer and counterclaim, alleging abuse of process, intentional infliction of emotional distress and wrongful rejection of her resignation. The matter was subsequently transferred to the Stark County Court of Common Pleas.
 {¶ 15} On January 13, 2004, Lane Witte tendered resignation of his social membership to Congress Lake. Lane Witte was never a stockholding member. Although in the letter Lane Witte indicated he intended to abandon the house, he did not do so, and Congress Lake proceeded to prosecute its forcible entry and detainer action to judgment on January 5, 2005. Despite lack of execution of the writ of restitution and ongoing litigation between the parties, Lane Witte vacated the premises in February, 2005.
 {¶ 16} The matter proceeded to a bench trial on June 23, 2004. Prior to opening statements, counsel for Lenschen Witte made an oral motion for dismissal of the complaint, arguing Congress Lake failed to name a necessary and indispensable party, to wit: Lane Witte. The trial court overruled the motion, finding it could not determine *Page 7 
whether Lane Witte was a necessary party as it is unclear to the court whether Lenschen Witte had the authority to sell the real estate in the manner.
 {¶ 17} As memorialized in a Judgment Entry filed January 5, 2005, the trial court found Congress Lake was entitled to restitution, damages and attorney fees under the lease agreement. The trial court further found the warranty deed executed by Lenschen Witte to Lane Witte was void ab initio. The trial court also ruled Lane Witte was not a necessary or indispensable party. Lenschen Witte appealed the decision to this Court, arguing inter alia the trial court erred if failing to dismiss Congress Lake's complaint for failure to name a necessary and indispensable party. This Court sustained Lenschen Witte's assignment of error, vacated the trial court's judgment, and remanded the matter to the trial court for consideration of Lane Witte's claims. Congress Lake Club v.Lenschen S. Witte, Stark App. No. 2005CA0037, 2006-Ohio-59.
 {¶ 18} Upon remand, Congress Lake filed an amended complaint, naming Lane Witte as a defendant and asserting allegations and claims relative to the failure of Lane and Stacy Witte to vacate the residence. Congress Lake also sought restitution, possession of property, and forfeiture of all improvements. Lenschen Witte filed an answer, but she did not assert a counterclaim. Rather, Lenschen Witte requested relief against Congress Lake on the counterclaim she filed in response to the original complaint, and sought punitive damages in the amount of $100,000. Lane Witte and Stacy Witte filed their answer and counterclaims, seeking damages for intentional infliction of emotional distress, breach of covenant of quiet enjoyment, tortious interference with contract, abuse of process, unjust enrichment, conversion, self-help eviction under R.C. 5321.15, and breach of duty to monitor and maintain the residence. *Page 8 
 {¶ 19} The matter proceeded to trial on March 5, 2007. At the close of evidence, the trial court granted Congress Lake's motion for directed verdict on Lenschen Witte's emotional distress and abuse of process counterclaims. The court permitted Lenschen Witte's breach of contract counterclaim to go to the jury. The trial court also granted Congress Lake's motion for directed verdict on Lane and Stacy Witte's tortious interference with contract and abuse of process counterclaims, but denied Congress Lake's motion for directed verdict on Lane and Stacy Witte's counterclaims of breach of covenant of quiet enjoyment, conversion, unjust enrichment, and negligence. Lane and Stacy Witte withdrew their counterclaims of intentional infliction of emotional distress and self-help eviction.
 {¶ 20} The jury found in favor of Lenschen Witte on Congress Lake's breach of contract and forfeiture claims. The jury found in favor of Lane and Stacy Witte on Congress Lake's breach of contract and forfeiture claims. The jury awarded damages to Lenschen Witte in the amount of $100,000, on the breach of contract claim; to Lane Witte in the amount of $382,000, on the conversion claim; and to Lane and Stacy Witte in the amount of $387,000, on their breach of covenant of quiet enjoyment claim. With respect to Lane and Stacy Witte's negligence claim, the trial court determined the jury's original verdict forms and interrogatories were inconsistent. On the verdict form, the jury indicated $25,000/each, but on the interrogatories, the jury awarded only $10,000/each. The trial court reinstructed the jury, which subsequently awarded $575,500 to Lane Witte, and $193,500, to Stacy Witte. The trial court entered judgment accordingly in an entry filed March 12, 2007. *Page 9 
 {¶ 21} Lane and Stacy Witte filed a motion for prejudgment interest on March 12, 2007. Lenschen Witte filed a motion for prejudgment interest on March 14, 2007. Via Order of the Court filed April 26, 2007, the trial court denied both motions. Congress Lake filed a motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial on March 26, 2007. The same day, Congress Lake also filed a motion for remittitur. Via Judgment Entry filed June 11, 2007, the trial court denied Congress Lake's motions.
 {¶ 22} It is from the June 11, 2007 Judgment Entry Congress Lake appeals, raising as error:
 {¶ 23} "I. THE TRIAL COURT ERRED WHEN IT FAILED TO EITHER GRANT SUMMARY JUDGMENT OR JUDGMENT NOTWITHSTANDING THE VERDICT IN CLC'S FAVOR ON ITS BREACH-OF-CONTRACT CLAIM AGAINST LENSCHEN WITTE.
 {¶ 24} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ALLOWED LENSCHEN TO ASSERT COUNTER-CLAIMS BARRED BY THE LAW-OF-THE-CASE NOT [SIC] THE [SIC] DOCTRINE AND RES JUDICATA.
 {¶ 25} "III. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT SUMMARY JUDGMENT, DIRECT A VERDICT, OR JUDGMENT NOTWITHSTANDING THE VERDICT IN CLC'S FAVOR ON LANE AND STACY WITTE'S BREACH-OF-CONTRACT/QUIET-ENJOYMENT CLAIM AS THEY HAD NO COGNIZABLE CLAIM AGAINST CLC. *Page 10 
 {¶ 26} "IV. THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT AND/OR DIRECTED A VERDICT OR JUDGMENT NOTWITHSTANDING THE VERDICT IN FAVOR OF CLC ON LANE WITTE'S `CONVERSION' CLAIM.
 {¶ 27} "V. THE TRIAL COURT ERRED IN FALLING [SIC] TO DIRECT A VERDICT OR GRANT JUDGMENT NOTWITHSTANDING THE VERDICT ON LANE AND STACY'S `NEGLIGENCE' CLAIM.
 {¶ 28} "VI. THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT, ENTER JUDGMENT IN CLC'S FAVOR NOTWITHSTANDING THE VERDICT, AND/OR ORDER A NEW TRIAL OR GRANTED A REMITTITUR ON ALL COUNTERCLAIMS AS THE DAMAGE AWARDS WERE NOT SUPPORTED BY LAW OR THE RECORD."
 {¶ 29} Lenschen Witte, and Lane and Stacy Witte cross-appeal relative to the trial court's April 26, 2007 Order. Lenschen Witte assigns as error:
 {¶ 30} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING LENSCHEN WITTE'S MOTION FOR PREJUDGMENT INTEREST ON THE DAMAGES THE JURY AWARDED HER ON HER BREACH OF CONTRACT CLAIM."
 {¶ 31} Lane and Stacy Witte assign as error: INSERT #3
 {¶ 32} "THE TRIAL COURT ERRED IN FAILING TO ORDER PREJUDGMENT INTEREST ON THE MARCH 12, 2007 JUDGMENT ENTERED IN FAVOR OF LANE AND STACY WITTE."
 APPEAL I {¶ 33} In its first assignment of error, Congress Lake maintains the trial court erred in failing to grant either Congress Lake's motion for summary judgment or *Page 11 
judgment notwithstanding the verdict on its breach of contract claim against Lenschen Witte.
 {¶ 34} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ. R. 56(C) provides, in pertinent part:
 {¶ 35} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
 {¶ 36} Pursuant to the above rule, a trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts, Houndshell v. American States Insurance Company
(1981), 67 Ohio St.2d 427. The court may not resolve ambiguities *Page 12 
in the evidence presented. Inland Refuse Transfer Company v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321. A fact is material if it affects the outcome of the case under the applicable substantive law, Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301.
 {¶ 37} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim,Drescher v. Burt (1996), 75 Ohio St.3d 280. Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist, Id. The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts, Henkle v.Henkle (1991), 75 Ohio App.3d 732.
 {¶ 38} An appellate court also conducts a de novo review of a trial court's decision on a motion for a directed verdict and a motion for judgment notwithstanding the verdict. Midwest Energy Consultants, L.C.C.v. Utility Pipeline, Ltd., Stark App. No. 2006 CA00048, 2006-Ohio-6232.
 {¶ 39} Article 2 of the Cottage Site Lease, which sets forth the restrictions and privileges thereunder, provides, in relevant part:
 {¶ 40} "A. No lot, ground or property of the company shall be leased or rented to any party not a stockholding member of the company; nor shall the same be sublet to or any lease assigned to any person unless such person is a stockholding member of the company in good standing. *Page 13 
 {¶ 41} "* * *
 {¶ 42} "M. * * * (3) No part of the Lessee's interest in this lease shall at any time vest in, or become the property or pass into the possession of any person not a stockholding member in good standing in The Congress Lake Company, * * * And in the event that the Lessee transfers or assigns whole or part of the Lessee's right, title and interest in this lease, or permits the possession thereof to pass, to any person not a stockholding member in good standing of the Congress Lake Company, * * * then this lease shall be null and void and at an end, and no preliminary notices to that effect shall be required."
 {¶ 43} Congress Lake contends the undisputed evidence established Lenschen Witte breached the plain language of the lease agreement by assigning the lease to Lane Witte, who was not a stockholding member. Congress Lake concludes because the issue of whether Lenschen Witte breached the lease was a pure question of law, the trial court should have granted summary judgment or JNOV in its favor. Lenschen Witte counters a question of fact remained as to whether she breached the stockholding member provision of the lease agreement, and, if she did breach the provision, whether the breach was material. Lenschen Witte further submits a question of fact remained as to whether Congress Lake waived the term. We agree with Lenschen Witte.
 {¶ 44} As set forth in our Statement of the Facts and Case, supra, although Lenschen Witte was awarded the residence at 2 West Dr., following her divorce in 1988, she was not a member, stockholding or otherwise, of Congress Lake until June, 1990. At that time, she became a social member. The Stark County Court of Common Pleas, Domestic Relations Division, ultimately issued an order transferring any and all of *Page 14 
Verlynn Witte's rights in the property to Lenschen Witte in February, 1992, because Verlynn Witte had failed to do so despite the domestic relations court's prior order. Still, Lenschen Witte did not become a stockholding member until approximately July 14, 1995. At that time, Lenschen Witte also became a full golf member as she had been advised she had to be a member of that level in order to own stock. No evidence was presented to show Congress Lake made efforts to enforce the stockholder requirement as to Lenschen Witte between 1990, and 1995. We find this evidence alone is sufficient to raise an issue of material fact as to whether Congress Lake waived its right to enforce the requirement Lenschen Witte, or her successor(s) in interest, hold stock prior to entering into or transferring the lease, particularly as it relates to this particular property.
 {¶ 45} The record is also replete with circumstantial evidence demonstrating the purchase of stock did not have to be prior to or contemporaneous with the execution of the lease agreement; therefore, the provision was not a material term of the agreement. Lane Witte executed a lease agreement in April, 1994, but did not purchase stock until August, 1994. Fran Rice, who is neither a member of Congress Lake, nor a stockholder, has a non-cottage site lease agreement for Lot No. 62, which is a piece of lakefront property situated in front of her home. Rice does not have a lease agreement for her home because she owns the land upon which it is built in fee simple. However, Congress Lake did not present any evidence explaining why it entered into the non-cottage site lease agreement with Rice when she was not a stockholding member or why Rice was not required to own stock. A comparison between the Congress Lake Stockholder Ledger and the lease agreements of other members, which were admitted *Page 15 
into evidence at trial, reveals delays between the execution of lease agreements and the purchase of stock.
 {¶ 46} Based upon the foregoing, we find the trial court did not err in failing to grant summary judgment or JNOV in favor of Congress Lake.
 {¶ 47} Congress Lake's first assignment of error is overruled.
 II {¶ 48} In its second assignment of error, Congress Lake submits the trial court erred in allowing Lenschen Witte to assert her counter-claims following this Court's remand as those claims were barred by the law of the case doctrine and res judicata.
 {¶ 49} "[T]he doctrine of the law of the case * * * establishes that the `decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" Pipe Fitters UnionLocal No. 392 v. Kokosing Constr. Co., Inc. (1998), 81 Ohio St.3d 214,218, 690 N.E.2d 515, quoting Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3,462 N.E.2d 410. "Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." Nolan, at syllabus. "Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." Id. at 3, 462 N.E.2d 410.
 {¶ 50} Under the doctrine of res judicata, "`[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" State ex *Page 16 rel. Denton v. Bedinghaus, 98 Ohio St.3d 298, 301, 2003-Ohio-861,784 N.E.2d 99, quoting Grava v. Parkman Twp., 73 Ohio St.3d 379,1995-Ohio-331, 653 N.E.2d 226, syllabus. Thus, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. Trojanski v. George, Cuyahoga App. No. 83472, 2004-Ohio-2414. Moreover, the doctrine of res judicata prohibits a collateral attack on an otherwise final judgment.Southridge Civic Assn. v. Parma, Cuyahoga App. No. 80230, 2002-Ohio-2748.
 {¶ 51} In Congress Lake Club v. Lenschen Witte, Stark App. No. 2005CA0037, 2006-Ohio-59, this Court sustained Lenschen Witte's first assignment of error, finding the trial court erred in failing to join Lane Witte as a necessary and indispensable party. Id. at para. 35. Based upon our disposition of the first assignment of error, we found Lenschen Witte's remaining two assignments of error to be moot. Id. at para. 26. We did not rule on the merits of these assignments of error. Rather, we reversed the judgment of the trial court and remanded the matter for further proceedings. Because this Court reversed the trial court's judgment in its entirety, Lenschen Witte's counterclaims are not precluded by either the doctrine of law of the case or the doctrine of res judicata.
 {¶ 52} Congress Lake's second assignment of error is overruled.
 III {¶ 53} In the third assignment of error, Congress Lake contends the trial court erred in failing to grant summary judgment, failing to direct a verdict, and failing to enter judgment notwithstanding the verdict in its favor on Lane and Stacy Witte's breach of contract/quiet enjoyment claim. *Page 17 
 {¶ 54} Our standard of review is set forth, supra.
 {¶ 55} Congress Lake claims the trial court issued two erroneous rulings, to wit: the general warranty deed executed by Lenschen Witte conveyed a leasehold interest to Lane Witte, and such conveyance created a valid, enforceable contract between Congress Lake and Lane Witte. Congress Lake submits these rulings are not supported by Ohio law. First, Congress Lake argues the general warranty deed executed by Lenschen Witte did not pass a cognizable interest in the lease agreement to Lane Witte. Next, Congress Lake asserts Ohio law precludes a subtenant from suing a lessor for breach of a covenant contained in a lease. Finally, Congress Lake submits the lease agreement prohibited the vesting of a leasehold interest in any person not a stockholding member in good standing. We shall address each in turn.
 {¶ 56} Congress Lake argues the general warranty deed executed by Lenschen Witte did not convey a leasehold interest in Lot No. 2 to Lane Witte because he was not a stockholding member. A general warranty deed conveys any and all of the interests possessed by the grantor at the time of the execution of said deed. At the time she executed the general warranty deed, Lenschen Witte held a valid lease on Lot No. 2 with Congress Lake. We find this lease was conveyed to Lane Witte through the general warranty deed. As we discussed supra, Congress Lake did not enforce the lease provision requiring an individual be a stockholding member prior to or contemporaneous with executing a lease agreement; therefore, Congress Lake cannot claim such provision prohibits Lenschen Witte from conveying her lease interest to Lane Witte. *Page 18 
 {¶ 57} Congress Lake further submits Ohio law precludes a subtenant from suing a lessor for breach of a covenant contained in a lease. Congress Lake notes it is well established under Ohio law, there is "no privity of contract between the original lessor and a subtenant."Hooper v. Seventh Urban, Inc. (1980), 70 Ohio App. 2d 101, 109 (citation omitted). Congress Lake concludes Lane Witte had no cause of action against it for the breach of any lease covenant, and should have sought redress against the sublessor/ original lessee, Lenschen Witte.
 {¶ 58} We need not determine whether Congress Lake's recitation of the law in this area is correct. Upon our review of the record, we fail to find where Congress Lake raised this issue in the trial court. It is a cardinal rule of appellate procedure that "an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." Schade v. CarnegieBody Co. (1982), 70 Ohio St.2d 207, 210, 436 N.E.2d 1001.
 {¶ 59} Lastly, Congress Lake argues the lease agreement expressly prohibits the vesting of the leasehold interest in any person not a stockholding member in good standing. Throughout the course of the proceedings, Lane Witte has conceded the fact he is not a stockholding member, Congress Lake concludes, therefore, by the express terms of the lease agreement, a leasehold interest did not vest in Lane Witte. Lane and Stacy Witte contend Congress Lake waived enforcement of this lease provision.
 {¶ 60} "[W]aiver of a contract provision may be express or implied."Natl. City Bank v. Rini, 162 Ohio App.3d 662, 834 N.E.2d 836,2005-Ohio-4041, at ¶ 24, citing Griffith v. Linton (1998),130 Ohio App.3d 746, 751, 721 N.E.2d 146. "`"[W]aiver by estoppel" existswhen the acts and conduct of a party are inconsistent with an intentto *Page 19 claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it.'" Natl. City Bank, at ¶ 24, quoting Mark-It Place Foods, Inc.v. New Plan Excel Realty Trust, Inc., 156 Ohio App.3d 65,804 N.E.2d 979, 2004-Ohio-411, at ¶ 57. (Emphasis sic.) "Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights." Natl. City Bank, at ¶ 24.
 {¶ 61} Whether a party's inconsistent conduct constitutes waiver involves a factual determination, and such a factual determination is properly made by the trier of fact. Walker v. Holland (1997),117 Ohio App.3d 775, 791, 691 N.E.2d 719.
 {¶ 62} In support of their position, Lane and Stacy Witte refer to the evidence presented at trial which established Lenschen Witte owned her home, after her divorce, for seven years prior to becoming a stockholding member; Lane Witte entered into a lease agreement with Congress Lake in April, 1994, and did not become a stockholding member until four months later; and Fran Rice, a current, longtime lessee, has never been a stockholding member. For the reasons set forth in our analysis of Congress Lake's first assignment of error, we find because Congress Lake did not assiduously enforce the stockholding member provision in respect to Lenschen Witte's lease; therefore, a leasehold interest did vest in Lane Witte.
 {¶ 63} Congress Lake's third assignment of error is overruled.
 IV {¶ 64} In the fourth assignment of error, Congress Lake contends the trial court erred in failing to grant summary judgment, failing to direct a verdict, and failing to enter judgment notwithstanding the verdict in its favor on Lane Witte's conversion claim. *Page 20 
 {¶ 65} Again, our standard of review is set forth, supra.
 {¶ 66} "Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. The measure of damages in a conversion action is the value of the converted property at the time it was converted."Tabar v. Charlie's Towing Serv., Inc. (1994), 97 Ohio App.3d 423,427-428, 646 N.E.2d 1132 (Citations omitted).
 {¶ 67} Congress Lake maintains the trial court's rulings were erroneous as Congress Lake "had every right to preclude Lane from occupying the Cottage Site after he vacated the home in February 2005." Brief of Appellant at 25. Congress Lake notes Lane Witte's only relief was to demand the return of the actual residence, which was his personal property pursuant to the terms of the lease agreement. Congress Lake submits Lane Witte never requested access to the cottage site to remove the house; therefore, he failed to establish a claim for conversion. We disagree.
 {¶ 68} When Lenschen Witte conveyed her property interests to Lane Witte, he became entitled to the rights of ownership and occupancy. In February, 2006, following this Court's remand in Congress Lake I, Lane Witte requested Congress Lake permit him to return to the 2 West Dr. residence. Congress Lake refused to grant Lane Witte such access.
 {¶ 69} Once this Court reversed the trial court's January 21, 2005 Judgment Entry, the parties returned to the status quo. Lane Witte demanded return of the house, *Page 21 
Congress Lake refused. We find the jury could properly concluded Lane Witte established the elements of conversion.
 {¶ 70} Congress Lake's fourth assignment of error is overruled.
 V {¶ 71} In its fifth assignment of error, Congress Lake argues the trial court erred in failing to direct a verdict or grant JNOV in its favor on Lane and Stacy Witte's negligence claim. Specifically, Congress Lake submits because Lane and Stacy Witte elected to assert a claim of conversion of the house, they were precluded from seeking damages for injury to the house after the conversion under a negligence theory. We agree.
 {¶ 72} However, we find no double recovery actually resulted. We have attempted to reconcile the jury's original verdict of $382,000, to Lane Witte on his conversion claim, and $387,000 to Lane and Stacy Witte on their breach of convenant of quiet enjoyment claim with its original verdict of $25,000 each to Lane and Stacy Witte on their negligence claim. Following reinstruction by the trial court because of the inconsistency between the original negligence verdicts and the associated interrogatories, the jury subsequently awarded Lane Witte $575,500, and Stacy Witte $193,500. It seems apparent to us the jury took the original awards on the conversion and breach of quite enjoyment claims, added them together ($382,000 + $387,000 = $769,000), and then reapportioned that amount between Lane and Stacy Witte ($575,500 + $193,500 = $769,000), without intending any additional award for either Lane or Stacy Witte based upon their negligence claims. As such, and based upon our resolution of assignment of error VI, infra, we find Congress Lake suffered no prejudice *Page 22 
as a result of the trial court's failure to grant JNOV. Accordingly, we overrule this assignment of error.
 VI {¶ 73} In its final assignment of error, Congress Lake challenges the jury's award of damages to the Wittes. Congress Lake asserts the trial court should have entered JNOV in its favor, ordered a new trial, or granted a remittitur.
 DAMAGES AWARDED TO LENSCHEN WITTE-BREACH OF CONTRACT {¶ 74} The jury awarded Lenschen Witte $100,000 on her counterclaim for breach of contract.
 {¶ 75} "Money damages awarded in a breach of contract action are designed to place the aggrieved party in the same position it would have been in had the contract not been violated." Schulke Radio Productions,Inc. v. Midwestern Broadcasting Co. (1983), 6 Ohio St.3d 436, 439. "The nonbreaching party must establish the fact of damage and then sustain its burden of proof as to the amount of damage by proof on any reasonable basis." Id. "In giving an award of money damages in a breach of contract action, the intent is to place the injured party in the same position it would have been in had the contract not been breached."Stratton v. Kent State Univ., Franklin App. No. 02AP-887, 2003-Ohio-1272.
 {¶ 76} The record reveals Lenschen Witte sent Congress Lake a handwritten note on March 3, 2003, in which she tendered her resignation. Accompanying the letter was a check in the amount of $1784.85, which represented her account balance as of January 25, 2003. On March 25, 2003, the account balance was $1100.82, which included charges for February, and March, 2003. After receiving the resignation letter, *Page 23 
Loretta Shackelford, the controller for Congress Lake, telephoned Lenschen Witte. Shackelford informed Lenschen Witte she (Shackelford) had spoken with Fred Zollinger, the secretary of Congress Lake Corporation as well as its legal counsel, and Zollinger stated Congress Lake would accept her resignation if she paid a dues and assessments for the month of March. Lenschen Witte paid $1100.84, to Congress Lake on April 15, 2003. Congress Lake did not accept her resignation, and sent a statement for April dues and assessments in the amount of $1532.12. On May 12, 2003, Lenschen Witte sent Congress Lake a check in the amount of $1045.29. With the payment, she included a letter, stating "I will not be paying any more dues, or other charges — as I paid for March, as you directed Loretta to inform me, even though the property was transferred on February 28, 2003." Still, Congress Lake did not accept her resignation.
 {¶ 77} At trial, counsel for Lenschen Witte argued she overpaid Congress Lake in the amount of $2146.74, which includes her April 15, 2003 payment of $1100.82, and May, 2003 payment of $1045.29.[3] She also asserts Congress Lake was required to buy-back her stock for $2500. The statement of account which was admitted into evidence shows $559.60, as the amount due for February, 2003. As Lenschen Witte still owned her home in February, 2003, we find she was responsible for that amount. Accordingly, $559.60, of the $1100.82, is not an overpayment. However, $541.22 is an overpayment. At most, Lenschen Witte overpaid Congress Lake $1586.51, for dues and assessments ($541.22 + $1045.29 = $1586.51). She is also entitled to $2500, from Congress Lake for the buy-back of her stock. *Page 24 
 {¶ 78} In her Brief to this Court, Lenschen Witte notes she testified at trial she became a full golf member in July 1995, after being advised by Congress Lake she had to do so in order to purchase stock. The testimony at trial revealed such was not the case. Thus, she contends "the differential in dues between a social member (which Lenschen was for 1992 to 1995) and full golf member (which Lenschen became in 1995 as she had been advised by CLC) * * * exceeded $50,000." Brief of Appellee/Cross-appellant Lenschen Witte at 25. This issue was only briefly touched upon during Lenschen Witte's direct examination at trial. On direct examination, when asked how the dues between social members and golf members compare, Lenschen Witte replied, "I don't know exactly anymore, but I think they're about twice as much for a regular [golf] member." Tr. Vol. III at 677. She reiterated she believed regular members pay twice as much as social members. Id. No witness testified as to a monetary figure. The record does show a full golf membership was $353.64/month in June, 2002. In January, 2003, the amount increased to $363.05/ month. Utilizing half of the $353.64/month figure (or $176.82), as the monthly cost of a social membership between July, 1995, and December, 2002, and utilizing one half of the $363.05/month figure (or $181.52/month) thereafter, we find Lenschen Witte would have overpaid Congress Lake $16,458.36, between July, 1995, and March, 2003.
 {¶ 79} Adding $2500 from the stock buy-back, $1586.51 for the overpayment of 2003 dues, and $16,458.36 for the increased payment for a golf membership as opposed to a social membership, we find Lenschen Witte should have been awarded damages in an amount no greater than $20,544.87. *Page 25 
 DAMAGES AWARDED TO LANE WITTE — CONVERSION {¶ 80} The jury awarded Lane Witte $382,000, on his counterclaim for conversion.
 {¶ 81} The measure of damages in a conversion action is the value of the converted property at the time it was converted. Lashua v. LakesideTitle Escrow Agency, Stark App. No. 2004CA00237, 2005-Ohio-1728, citing Brumm v. McDonald Co. Securities, Inc. (1992),78 Ohio App. 3d 96, 104. The plaintiff bears the burden of proving damages. ToledoEdison Co. v. Teply, Erie App. No. E-02-022, 2003-Ohio-1417.
 {¶ 82} The evidence presented at trial established the house had been appraised at $260,000, shortly before Lenschen Witte transferred it to Lane Witte. Lane Witte purchased the home for $210,000. A trial court may award punitive damages when the conversion is willful, wanton, fraudulent, malicious, or prompted by ill motive. Karimkhan v.Fiddler (July 20, 1983), Clermont App. No. 1160, unreported. (Citation omitted). The trial court did not instruct the jury on punitive damages. Nor did the jury make any finding as to willful, wanton, fraudulent, malicious, or ill motive. It is unclear how the jury reached the amount of $382,000.
 {¶ 83} We find the most the jury should have awarded to Lane and Stacy Witte on their conversion claim was $260,000.
 DAMAGES AWARDED TO LANE STACY WITTE-NEGLIGENCE {¶ 84} Having found in Assignment of Error V, the jury did not actually intend to award any additional damages for negligence, we find any damages awarded to Lane and Stacy Witte on their negligence claim to be inappropriate. *Page 26 
 DAMAGES AWARDED TO LANE STACY WITTE — BREACH OF CONTRACT {¶ 85} The jury awarded Lane and Stacy Witte $387,000 on their claim for breach of covenant of quiet enjoyment. Lane and Stacy Witte asserted this claim based upon their wrongful eviction by Congress Lake.
 {¶ 86} The trial court instructed the jury on damages for breach of covenant of quiet enjoyment as follows:
 {¶ 87} "Contract damages. You may only award those damages that were the natural and probable result of the breach of the contract or that were reasonable within the contemplation of the parties as the probable result of the breach of contract. This does not require that The Congress Lake Company actually be aware of the damage that will result from the breach of contract so long as the damages were reasonably foreseeable at the time the parties entered into the contract and as a probable result of the breach." Trial Tr. Vol. V, at 1177.
 {¶ 88} The evidence presented at trial established the damages incurred by Lane and Stacy Witte due to the wrongful eviction were their monthly mortgage payments for the 2 West Dr. residence during the time period between the eviction and the trial, in the amount of $9394.37, and storage costs in the amount of $1960.24, for a total of $11,354.61. We find any award of damages above $11,354.61, were unsupported. We note the trial court did not instruct the jury on punitive damages and Lane and Stacy Witte have not assigned this failure as error on cross-appeal.
 {¶ 89} In its March 12, 2007 Judgment Entry, memorializing the jury's verdict, the trial court recognized the problem with the jury's award, stating: *Page 27 
 {¶ 90} "Upon analysis, it is apparent to this Court that the jury lost its way and that, in light of arguments of counsel for Lane and Stacy Witte, the jury intended to award compensatory damages for negligence to each of them in the sum of $35,000. Nevertheless, as previously stated on the record at the conclusion of trial, the jury's interrogatories upon re-submission technically comply with Ohio law. Whether the general verdict upon re-submission also complies with Ohio law is debatable. But the Court has determined to enter judgment based upon the final documents provided by the jury." March 12, 2007 Judgment Entry at 2.
 {¶ 91} In its June 11, 2007 Judgment Entry, denying Congress Lake's motions for JNOV, new trial, and remittitur, the trial court noted, "It is true that this Court has, on the record, expressed concern about the jury verdicts, particularly the negligence verdict, in this case. However, this Court is not willing to superimpose its judgment on that of the jury."[4]
 {¶ 92} We find the trial court was correct in having concerns about the jury's damages awards. The jury awarded damages in excess of that which was established by the evidence at trial. Based upon the foregoing, we sustain, in part, Congress Lake's sixth assignment of error.
 {¶ 93} We reverse the verdict with respect to Lenschen Witte's award, and remand the matter to the trial court with instruction to remit her damages to $20,544.87 plus pre-judgment interest calculated in accordance with our disposition of her cross-appeal, or to allow her to elect a new trial on damages only. *Page 28 
 {¶ 94} We reverse the verdicts with respect to Lane and Stacy Witte's negligence claims.
 {¶ 95} We reverse the verdict with respect to Lane Witte's conversion claim, and remand the matter to the trial court with instruction to remit his conversion award to $260,000 plus pre-judgment interest calculated in accordance with our disposition of his cross-appeal, or to allow him to elect a new trial on damages only.
 {¶ 96} We reverse the verdict with respect to Lane and Stacy Witte's breach of covenant of quiet enjoyment claim and remand the matter to the trial court with instructions to remit the award to $11,354.61 plus pre-judgment interest calculated in accordance with our disposition for their cross-appeal, or to allow them a new trial on damages only.
 LENSCHEN WITTE CROSS-APPEAL I LANE AND STACY WITTE CROSS-APPEAL I {¶ 97} Because Lenschen Witte's sole assignment of error in her cross-appeal is identical to Lane and Stacy Witte's sole assignment of error in their cross-appeal, we shall address the two together. The Wittes maintain the trial court erred in failing to award them pre-judgment interest as Congress Lake refused to promptly resolve the dispute, and initiated the action out of vindictiveness.
 {¶ 98} The grant or denial of pre-judgment interest rests within the discretion of the trial court, and will not be disturbed absent an abuse of discretion. Wagner v. Midwestern Indem. Co., 83 Ohio St.3d 287, 292,1998-Ohio-111.
 {¶ 99} R.C. 1343.03(A) governs pre-judgment interest and states, in relevant part: "(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the *Page 29 
Revised Code, when money becomes due and payable upon any * * * instrument of writing,* * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum[.]"
 {¶ 100} We find, as a matter of law pursuant to R.C. 1343.03(A), Lenschen Witte is entitled to pre-judgment interest on the award of $20,544.87, commencing on March 3, 2003, the date of her letter of resignation. With respect to Lane and Stacy Witte's breach of covenant of quiet enjoyment claim, we find, as a matter of law pursuant to R.C. 1343.03(A), they are entitled to pre-judgment interest on the amount of $11,354.61, commencing February 3, 2005[5], the date on which they vacated 2 West Drive.
 {¶ 101} Section (C) of R.C. 1343.03 applies to tort actions, and provides: "If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case[.]"
 {¶ 102} We find the trial court abused its discretion in failing to award pre-judgment interest on Lane Witte's conversion claim. Because conversion is an intentional tort, we find February 3, 2005, the date on which Congress Lake converted *Page 30 
the property, is the appropriate date from which pre-judgment interest should commence.
 {¶ 103} Lenschen Witte's sole assignment of error in her cross-appeal is sustained. Lane and Stacy Witte's sole assignment of error in their cross-appeal is sustained.
 {¶ 104} The judgment of the Stark County Court of Common Pleas is affirmed in part, and reversed in part. The matter is remanded to the trial court for further proceedings in accordance with this opinion and the law.
 Hoffman, P.J. Delaney, J. and Boggins, V.J. concur *Page 31 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed in part, and reversed in part. The matter is remanded to the trial court for further proceedings in accordance with our Opinion and the law. Costs to be divided equally.
[1] At the time of the execution of the lease agreement, Lenschen Witte was not a member, stockholding or otherwise, of Congress Lake.
[2] There is no explanation as to why the lease agreement was not recorded until 1998.
[3] There is a discrepancy of .63 between the amount Lenschen Witte states she overpaid, and the amount credited to her account.
[4] We find the trial court's conclusion the jury lost its way with respect to the negligence award and its concerns over the jury's resubmitted general verdict troublesome. The legal consequences of the two leads to granting a remittitur or new trial on damages, not entering judgment on the same.
[5] See, Trial Tr., Vol. IV at 860. *Page 1