OPINION
{¶ 1} Appellant/Cross-Appellee Tammy Jones ("Jones") appeals the decision of the Guernsey County Court of Common Pleas, Juvenile Division, that granted permanent custody of two of her three children to Appellee/Cross-Appellant Guernsey County Children Services Board. ("GCCSB"). Appellee GCCSB cross-appeals challenging the trial court's decision to deny its motion for permanent custody of appellant's oldest daughter, Mercedes Jones. The following facts give rise to this appeal.
 {¶ 2} In April 2003, GCCSB filed a complaint alleging the three minor children of Appellant Tammy Jones and Brian Jones were dependent, neglected and/or abused. On April 17, 2003, the trial court awarded temporary custody of the children to GCCSB. The trial court found the children to be both dependent and abused on June 26, 2003. Thereafter, on December 1, 2004, the trial court granted temporary custody of the three children to appellant and the trial court terminated GCCSB's temporary custody.
 {¶ 3} On March 22, 2005, GCCSB moved to terminate protective supervision and return temporary custody to GCCSB. At the conclusion of a hearing conducted by the trial court on March 30, 2005, the court found an emergency existed and removed the children from appellant's custody. On June 7, 2005, the trial court granted temporary custody to GCCSB. GCCSB moved for permanent custody of the children on July 28, 2005. The trial court conducted hearings on GCCSB's request for permanent custody on January 12, 2006 and January 20, 2006. On January 31, 2006, the trial court denied the motion for permanent custody as to the oldest child, Mercedes, but granted the motion as to Opel and Alexis.
 {¶ 4} Appellant timely filed a notice of appeal and GCCSB filed a notice of cross-appeal. The parties set forth the following assignments of error for our consideration.
 Direct Appeal {¶ 5} "I. THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT GUERNSEY COUNTY CHILDREN SERVICES BOARD FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT'S PARENTAL RIGHTS SHOULD BE TERMINATED."
 Cross-Appeal {¶ 6} "I. THE GUERNSEY COUNTY CHILDREN SERVICES BOARD PRESENTED CLEAR AND CONVINCING EVIDENCE THAT PARENTAL RIGHTS AS TO ALL THREE CHILDREN SHOULD BE TERMINATED, AND THEREFORE THE JUDGE ERRED AND ABUSED HIS DISCRETION WHEN HE FAILED TO GRANT PERMANENT CUSTODY OF MERCEDES WHEN HE FOUND THAT, AT NINE YEARS OLD, SHE WAS `NO LONGER SUSCEPTIBLE TO FURTHER DAMAGE BY HER MOTHER' AND `IS OLD ENOUGH AND BIG ENOUGH TO FEND FOR HERSELF', AND NO EVIDENCE WAS PRESENTED TO SUPPORT HIS FINDINGS."
 I {¶ 7} In the direct appeal, appellant maintains the trial court's judgment terminating her parental rights, as to the two youngest children, is against the manifest weight of the evidence because GCCSB failed to show by clear and convincing evidence that her parental rights should be terminated. We disagree.
 {¶ 8} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder can base its judgment. CrossTruck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 9} Also, clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court defined "clear and convincing evidence" as follows:
 {¶ 10} "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In reEstate of Haynes (1986), 25 Ohio St.3d 101, 103-104.
 {¶ 11} In reviewing whether a trial court's decision is based upon clear and convincing evidence, "* * * a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." State v. Schiebel (1990), 55 Ohio St.3d 71, 74. "An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law." Id. Issues relating to the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 {¶ 12} In the case sub judice, appellant argues the best interest factors, under R.C. 2151.414(D), establish that the two younger children, Opel and Alexis, should be returned to her custody. The factors a juvenile court is to consider when making a best interest determination are as follows:
 {¶ 13} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 14} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 15} "(3) The custodial history of the child;
 {¶ 16} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and
 {¶ 17} "(5) Whether any factors listed under R.C.2151.414(E)(7) to (11) apply."
 {¶ 18} Appellant maintains the first, second and fourth factors support her argument. Appellant argues that she has a strong bond with her children that would be significantly affected if permanent custody were granted to GCCSB. Appellant cites the testimony of caseworker Chris Hannahs who stated that the children are bonded well with appellant. Tr. Vol. I at 146-147. Maria Frank, who worked with the family through the Diversion Program, testified that the children have a bond with appellant. Id. at 97.
 {¶ 19} GCCSB does not deny that the children are bonded with appellant. Instead, GCCSB raises safety concerns and whether appellant is able to provide a secure permanent placement. Maria Frank testified about observations she made of the children and the condition of the home:
 {¶ 20} "They have three hermit crabs, two to three cats, and three dogs. The kids' legs were all bitten up, bloody and scratched from being outside in the yard unsupervised, and in the house with the fleas. The kids were very dirty, their hair was dirty. We were very concerned that the lice has been an issue five or six times since the last court hearing. Mom has a new tattoo, but can't afford to buy lice medicine for getting rid of lice and washing up the house." Id. at 93.
 {¶ 21} Chris Hannahs testified that appellant failed to complete most of the goals of her case plan. Appellant was required to do the following under the case plan: attend and participate in counseling for victims of domestic violence; attend counseling at Six Counties; maintain stable employment; pay child support; work with Frank Washburn and Maria Frank as part of the Diversion Program and maintain stable housing. Id. at 130-136. Appellant was only able to comply with the housing requirement. Id. at 153.
 {¶ 22} The guardian ad litem, William Nicholson, testified about appellant's unwillingness to follow recommendations. Mr. Nicholson testified at the hearing that:
 {¶ 23} "Mother does not seem willing to follow the recommendations of the professional caregivers, advisors, other — whatever they are. She does not seem to want to — it's kind of her way or the highway. It's either going to be her way or not at all. And if anybody disagrees with her recommendations, they're wrong." Tr. Vol. II at 233.
 {¶ 24} Cheryl Gadd, a CASA volunteer, testified that appellant has improved her parenting skills, however, according to Ms. Gadd, the issue is not appellant's love for her children, but rather appellant's ability to provide a safe environment for her children. Id. at 264. Specifically, Ms. Gadd referred to the fact that appellant lives with a man who has a history of felonies and allows another man, with a history of felonies against children, to baby-sit her children. Id. at 264-265.
 {¶ 25} In its judgment entry, the trial court made the following conclusions of law concerning Opel and Alexis:
 {¶ 26} "(i) Alexis and Opel Jones have bonded more with their foster parents than their parents.
 "* * * {¶ 27} "(iii) Alexis and Opel have expressed a desire, if anything to return to their pets; mother is not mentioned. The children do not want to return to father.
 "* * * {¶ 28} (vi) All three of the children need a legally secure permanent placement. The two younger children, Alexis and Opel, cannot be placed anywhere other than granting permanent custody to Guernsey County Children Services Board. * * *
 "* * * {¶ 29} "(viii) The mother has consistently failed to both recognize threats to the children's safety and take all reasonable steps to protect the children from those threats. The two youngest children are vulnerable to the mother's omission. * * *" Journal Entry, Jan. 31, 2006, at 4-5.
 {¶ 30} We find the record contains competent, credible evidence to support the trial court's judgment. Attempts at reunification with Opel and Alexis have been unsuccessful. The children need a safe and secure environment and appellant has demonstrated an unwillingness to work with professionals in order to provide such an environment for her children. Although Opel and Alexis may be bonded with appellant, evidence in the record established that they thrived while in the care of foster parents. Accordingly, the juvenile court's judgment terminating appellant's parental rights as to Opel and Alexis is not against the manifest weight of the evidence.
 {¶ 31} Appellant's sole assignment of error is overruled.
 I {¶ 32} On cross-appeal, GCCSB contends the trial court abused its discretion when it failed to grant permanent custody of Mercedes to GCCSB pursuant to its motion for permanent custody. We agree.
 {¶ 33} The same standard of review enunciated above, in the direct appeal, also applies to GCCSB's cross-appeal. In its journal entry, the trial court made the following conclusions of law concerning Mercedes:
 {¶ 34} "(ii) Mercedes Jones has a strong bond with her mother and wishes to return home to her mother. Mercedes Jones has bonded more with her siblings in a `parentified' role than in a sibling role. Mercedes (sic) actions towards her siblings worry the foster mother that the child will discipline her siblings too severely before the foster mother can get to the children and intervene.
 "* * * {¶ 35} "(iv) Mercedes also wishes to return to her animals, but when pressed will admit that she also wishes to return to her mother. Mercedes also does not want to return to father.
 "* * * {¶ 36} "(vi) * * * Mercedes may be placed with her mother. Mercedes should be old enough and not as susceptible to further damage by her mother as the youngest two.
 "* * * {¶ 37} "(viii) * * * The oldest child [Mercedes] is rapidly becoming old enough and big enough to fend for herself despite her mother's omissions. This Court finds that Mercedes is of a maturity and stature to be returned to her mother." Journal Entry, Jan. 31, 2006, at 4-5.
 {¶ 38} The only testimony regarding Mercedes' ability to care for herself came from her foster mother, Betty Moore. Ms. Moore initially testified as follows:
 {¶ 39} "ATTORNEY TRESL: Would you agree that what you told me at the time is that you felt as long as Mercedes wasn't with the siblings that she would do well to go back with mom?
 {¶ 40} "MS. MOORE: She probably would, yeah. Tr. Vol. II at 54.
 {¶ 41} However, after making that statement, Ms. Moore qualified it by further testifying that, "* * * I think she would be all right — Sadie can now take a bath. She can get herself something to eat. She can pretty much take care of herself. I'm not sure she could protect herself if it should ever come to that." Id. at 69.
 {¶ 42} As an appellate court, we are not to substitute our judgment for that of the trial court. However, we may do so when there does not exist competent and credible evidence to support the findings of fact and conclusions of law made by the trial court. In the case sub judice, the trial court expressed its concern regarding the safety of all three children since appellant was residing with known felons. The trial court specifically stated that appellant "* * * has consistently failed to both recognize threats to the children's safety and take all reasonable steps to protect the children from those threats." Journal Entry, Jan. 31, 2005, at 5.
 {¶ 43} Although at nine years of age Mercedes may be able to feed and bathe herself, there is no competent and credible evidence in the record that Mercedes would be able to protect herself from the known felons that appellant has residing in her residence. Further, there was no evidence in the record that appellant intended to stop residing with known felons. In fact, the trial court noted that appellant was still residing with a know felon up to the final days of the hearing in this matter. Journal Entry, Jan. 31, 2006, at 3.
 {¶ 44} We also find persuasive in our decision the report of the guardian ad litem. Mr. Nicholson served as the children's guardian ad litem for almost three years. The guardian ad litem made the following observations in his report:
 {¶ 45} "The six month reunification was unsuccessful as the children all regressed in their development, behavior and well-being, and they were returned to the foster home, where they have gradually improved but show many indications of the problems they encountered from the faults of both parents, many of which are set forth in the original Complaint in this case.
 "* * * {¶ 46} "In the opinion of the guardian-ad-litem, it has been apparent from very early in this case that it was and remains in the best interest of Mercedes Jones, Alexis Jones and Opel Jones that their custody should not be with either biological parent, Brian Jones or Tammy Jones. Each parent has had an extraordinary amount of time and opportunity to do the things necessary to justify reunification with their children. Neither parent has even come close to meeting the tests that must be shown to qualify them as suitable custodians for any of these three little girls. Nor is there any viable reason to believe that either parent will make the dramatic changes that would be necessary to change the opinion of the undersigned. After almost three years, these little girls deserve the stability and structure that will be lacking if they are returned to either biological parent. The motion for permanent custody is well justified in this case and should be granted in the best interest of Mercedes, Alexis and Opel Jones." Report of Guardian Ad Litem, Jan. 11, 2006, at 1-2.
 {¶ 47} Based upon the above, we find the trial court's decision to deny GCCSB's motion for permanent custody, as to Mercedes Jones, is against the manifest weight of the evidence and is not supported by clear and convincing evidence.
 {¶ 48} GCCSB's sole assignment of error is sustained.
 {¶ 49} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
By: Wise, P.J. Edwards, J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Costs to be split equally between Appellant and Appellee.