The CITY OF DOVER, Appellee

v.

R.J. CORMAN RAILROAD COMPANY CLEVELAND LINE, Appellant.

[Cite as *Dover v. R.J. Corman R.R. Co. Cleveland Line*, 181 Ohio App.3d 31, 2009-Ohio-562.]

Court of Appeals of Ohio,
Fifth District, Tuscarawas County.

No. 2008 AP 07 0048.

Decided Feb. 2, 2009.

32

Douglas J. O'Meara, Dover City Law Director, for appellee.

Eastman & Smith Ltd., D. Casey Talbott, and Jeffrey M. Stopar, for appellant.

EDWARDS, Judge.

{¶ 1} Appellant, R.J. Corman Railroad/Cleveland Line, appeals from the June 2, 2008, judgment entry of the Tuscarawas County Court of Common Pleas, granting appellee's, the city of Dover's, petition to construct an at-grade crossing over appellant's railroad tracks.

## STATEMENT OF FACTS AND CASE

{¶ 2} In 1995, the mayor of Dover, Richard Homrighausen, contacted the Ohio Department of Transportation ("ODOT") and other sources seeking to develop an interchange off Interstate 77 at County Road 80. The new interchange was sought to relieve existing traffic congestion and advance economic development in the north and west quadrants of Dover.

{¶ 3} Since 1995, funding for the project has been received from several sources, including a 1998 Federal Highway Construction Bill, TRAC (i.e., the Transportation Review Advisory Council), and local revenue. The total construction financing is in excess of $24 million.

{¶ 4} In 1997, ODOT became involved in overseeing construction of the project. Part of the construction process involved developing proposed interchange alternatives. After a study by URS Engineering, ODOT, through its Local 11 District Office, drafted two alternative construction proposals for the proposed interchange.

{¶ 5} In May 2004, ODOT conducted public meetings to select a preferred alternative for the interchange project, and two alternative plans were presented to the public for consideration. Alternative one required a full diamond interchange, a new public-access road, and the construction of an at-grade crossing over appellant's railroad tracks. Alternative two required a full diamond interchange with a loop ramp in the northeast quadrant, the relocation and rehabilitation of approximately 2,000 feet of railroad track, and an at-grade crossing at County Road 80. Another alternative that was developed, but was not pursued or presented to the public, was the construction of a bridge over appellant's railroad tracks to avoid an at-grade crossing in alternative one.

{¶ 6} On August 25, 2004, ODOT announced alternative one, with some revision, as being the public's preferred plan. In addition, ODOT found alternative one to be the most economically efficient and practical interchange construction.

{¶ 7} In May 2005, alternative one received final approval from the National Highway Protection Agency and the Federal Highway Department.

{¶ 8} However, in order to begin construction of alternative one, Dover had to seek court approval for the at-grade crossing. In furtherance of the plan, on September 19, 2005, Dover passed an emergency ordinance authorizing the law director to petition the Tuscarawas County Court of Common Pleas for an at-grade crossing to create a new access road from Ohio Avenue to Progress Street in Dover.

{¶ 9} On December 6, 2006, Dover, by and through its law director, filed a petition in the Tuscarawas County Court of Common Pleas in accordance with R.C. 4957.30, against appellant, R.J. Corman Railroad/Cleveland Line. In the petition, appellee sought the court's authorization and permission to construct an at-grade crossing over appellant's existing railroad tracks. On January 8, 2006, appellant filed an answer and affirmative defenses in opposition to the petition.

{¶ 10} On April 29, 2008, a bench trial was held. The court heard the testimony of several witnesses, including Lloyd V. MacAdam, the production administrator for ODOT, Thomas R. Zeinz, an expert in railroad-safety issues for Dover, Mayor Richard Homrighausen, and Darrell R. Priddy, appellant's representative.

{¶ 11} MacAdam testified that he oversees and participates in the design of all on-going construction projects in the seven counties that comprise District 11, including Tuscarawas County. He stated that alternative one was chosen as the preferred plan for two significant reasons.

{¶ 12} MacAdam testified that first, the loop ramp in alternative two created a "tight turning radius" and created the likelihood of multiple "truck tip over" type accidents that could endanger the traveling public and property. MacAdam testified that the Strasburg exit has a loop ramp similar to the one proposed in alternative two and that there have been four truck rollovers at that interchange in the past year.

{¶ 13} MacAdam testified that second was overall project costs. MacAdam testified that the projected construction cost in 2004 for alternative two was approximately $2.6 million greater than the costs for alternative one and that these costs have an anticipated rate increase of nine percent from 2004 to 2009. MacAdam testified that the costs would include the relocation of Dover's fill pond and the relocation and rehabilitation of 2,000 feet of railroad track and rehabilitation of the existing at-grade crossing at County Road 80.

{¶ 14} MacAdam further stated that the construction of an overpass, as an alternative to an at-grade crossing in alternative one, was economically prohibitive. He stated that the cost of constructing the overpass in 2004 was $2.6 million. He stated that with a projected increase in expenses of 5.5 percent per year, the cost of construction of the overpass would be approximately $3.4 to $3.5

million in 2009 and 2010. He testified that the actual rate of inflation for construction was nine percent, meaning that construction costs of the overpass would likely exceed $3.5 million. He testified that this estimate did not include land-acquisition costs, which he anticipated would be significant, because the encroachment would substantially affect the commercial enterprises in the vicinity. MacAdam testified that the encroachment would affect businesses such as Inca Pallets, Snyder Manufacturing, and Zimmerman Patient Care by limiting the delivery of goods and their use of their commercial properties. MacAdam estimated that the land-acquisition costs would be equal to the cost of the construction of the overpass and would be in excess of $3.5 million.

{¶ 15} Additionally, MacAdam testified that studies performed regarding the proposed probable use of the roadway by vehicles showed that the average daily traffic volume at the location of the at-grade crossing in 2010 would be 2,120 vehicles per day and 2,380 vehicles per day in 2030. He stated that this traffic flow was similar to a local roadway. MacAdam stated that the speed limit on the proposed access road (Guy Smith Way), which would travel over the at-grade crossing and the connecting road (Progress Street), was 25 miles per hour. He stated that Progress Street would dead-end and that future traffic in the area would remain limited. He stated that Dover Chemical, a local commercial business whose trucks transport hazardous chemicals, does not access I–77 from Progress Street, and it was not likely that trucks carrying hazardous chemicals would be traveling over the at-grade crossing.

{¶ 16} Finally, MacAdam testified that if the interchange construction project did not proceed in fiscal year 2009 and if the proposed bid date of March 2009 was not met, the funding received from TRAC would be withdrawn, and the interchange construction plan would likely be aborted.

{¶ 17} Thomas R. Zeinz testified regarding the railroad-safety issues associated with the proposed at-grade crossing. Zeinz testified that approximately two trains per day would travel the rail line and would be traveling at a speed of 25 miles per hour in the vicinity of the proposed at-grade crossing. Zeinz recommended that signage, gates, and lights be installed at the proposed at-grade crossing. He testified that passive signage, such as cross-bucks, would limit the rate of a vehicle/train collisions to one every 16.18 years. He also testified that the installation of gates and lights would further reduce the rate of a vehicle/train collision to one in every 43.6 years. MacAdam testified that ODOT would be willing to install state-of-the-art crossing devices and would fund all gates, lighting, safety devices, and signage necessary for the at-grade crossing construction. Zeinz testified, "My opinion is that this crossing would be as safe [as] or safer than most of the other crossing in the State of Ohio." Zeinz also testified

that the alternative two interchange construction plan was unsafe due to the tight radius of the loop turn.

{¶ 18} Mayor Homrighausen testified that he has been involved in the project since 1995. He stated that funding for the project has been received from several sources, including Dover, which has committed $1 million to the project. He further stated that the commercial businesses, such as Zimmerman Patient Care, have a tremendous impact on Dover, and it was important to maintain the commercial businesses' needed access. He testified that it was also necessary to maintain the fill pond as a retention area to control flooding. He further testified that the additional costs of alternative two and/or the overpass construction would affect the city's fiscal ability to construct an interchange.

{¶ 19} Darrell Priddy testified that the existing at-grade crossing at County Road 80 has lights and gates and has had no accidents since it was installed ten years ago. He stated that trains would be traveling approximately 25 miles per hour, and approximately two trains would travel the vicinity of the proposed at-grade crossing each day. He stated that as required by law, trains must blow their horns 1,400 feet from an at-grade crossing. He stated that the trains would initially blow their horns for the existing County Road 80 crossing and then for the proposed at-grade crossing at Guy Smith Way.

{¶ 20} After the presentation of evidence on June 2, 2008, the trial court issued a decision granting appellee's petition and authorizing the construction of the proposed at-grade crossing in alternative one of the interchange construction project.

{¶ 21} It is from this decision that appellant now seeks to appeal, setting forth the following assignments of error:

{¶ 22} "I. The judgment of the trial court is against the manifest weight of the evidence.

{¶ 23} "II. The trial court erred and abused its discretion in excluding the testimony of appellant's proffered expert engineer, George Zimmerman."

I

{¶ 24} In the first assignment of error, appellant argues that the appellee failed to prove by clear and convincing evidence that the at-grade crossing over appellant's railroad tracks is reasonably required. Appellee argues that there are at least two other alternatives that were feasible from both an engineering and cost standpoint. Therefore, appellant argues that the trial court's decision is against the manifest weight of the evidence. We disagree.

{¶ 25} Initially, R.C. 4957.30 requires a municipality to file a petition in the court of common pleas for authorization to construct an at-grade crossing. In the petition, the municipality is required to set forth reasons that the crossing is necessary and desirable. Further, the party petitioning the court to construct an at-grade crossing must prove the statutory criteria set forth in 4957.31 by clear and convincing evidence in order for the court to approve an at-grade crossing. See *Mentor v. Norfolk S. Ry. Co.*, Lake App. No. 2003–L–086, 2005-Ohio-3410, 2005 WL 1538391; see also *Fostoria v. CSX Transp., Inc.* (Dec. 18, 1991), Seneca App. No. 13–91–3, 1991 WL 271709; *Mentor v. CSX Transp., Inc.*, Lake App. No. 2003–L–088, 2005-Ohio-3385, 2005 WL 1538236.

{¶ 26} The Ohio Supreme Court defined "clear and convincing evidence" as follows: "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 103–104, 25 OBR 150, 495 N.E.2d 23.

{¶ 27} In reviewing whether a trial court's decision is based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. "An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law." Id. Issues relating to the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273, "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *In re Jones*, Guernsey App. No. 06CA9, 2006-Ohio-3363, 2006 WL 1793249.

{¶ 28} Pursuant to R.C. 4957.31, before the court can authorize the construction of an at-grade crossing, the petitioner must show that the crossing is reasonably required for one of the following reasons: (1) the at-grade crossing is "reasonably required to accommodate the public"; (2) the at-grade crossing is reasonably required to "avoid excessive expense in view of the small amount of traffic on the highway or railroad, and considering the future uses to which the highway may be adapted"; (3) the at-grade crossing is reasonably required "in

view of the difficulties of other methods of construction"; and/or (4) the at-grade crossing is reasonably required for "other good and sufficient reasons."

{¶ 29} Upon review, we conclude that the evidence established by clear and convincing evidence that the at-grade crossing was reasonably required for the reasons listed in R.C. 4957.31. Overall, the evidence established that alternative one was less expensive, less dangerous and required less encroachment on the local community and surrounding lands than either alternative two and/or the construction of an overpass.

{¶ 30} The evidence established that the construction of alternative one, with an at-grade crossing, was reasonably required to accommodate the public. Mayor Homrighausen testified that the interchange was necessary to relieve traffic congestion and advance commercial industry in Dover. Furthermore, alternative one was chosen as the best alternative by both the public and ODOT.

{¶ 31} The evidence established that alternative one would be less expensive for the public than either alternative two or construction of an overpass. MacAdam testified that the cost of alternative two in 2004 was approximately $2.6 million more than alternative one and that those costs would likely increase by 5.5 percent to nine percent annually from 2004 to 2009 and 2010. He stated that in addition, alternative two would require the relocation and rehabilitation of 2,000 feet of railroad tracks and rehabilitation and relocation of the at-grade crossing at County Road 80, as well as the relocation of Dover's fill pond.

{¶ 32} The evidence established that the construction of an overpass was economically unfeasible and not a reasonable alternative. MacAdam testified that the overpass would cost in excess of $3.5 million and that additional costs would be incurred in the amount of $3.5 million to acquire commercial land. Furthermore, he stated that the encroachments on the commercial property would inhibit commercial businesses that are vitally important to Dover.

{¶ 33} The evidence also established other good and sufficient reasons to adopt alternative one with an at-grade railroad crossing. Zeinz testified that the at-grade crossing included in alternative one would be as safe as or safer than most crossings in Ohio. Zeinz testified that the proposed at-grade crossing would be a level, low-grade crossing. MacAdam testified that vehicle traffic over the crossing would be minimal, with 2,120 vehicles crossing in 2010 and 3,380 vehicles in 2030. MacAdam stated that the traffic would be traveling at 25 miles per hour and would not likely include trucks carrying hazardous waste from the Dover Chemical Plant. Zeinz stated that the train traffic would be approximately two trains per day, traveling at approximately 25 miles per hour, and that those trains would be required to blow their horns within 1,400 feet of the crossing. Finally, Zeinz stated that if the at-grade crossing was equipped with state-of-the-art

safety gates, lights, and signage, it would reduce the risk of a vehicle/train collision to one in every 43.6 years.

{¶ 34} The testimony established that alternative two would be dangerous, compared to alternative one. MacAdam testified that alternative two would require the construction of a loop ramp, which would have a "tight turning radius" and would create the likelihood of multiple "truck tip over" type accidents that could endanger the traveling public and property.

{¶ 35} For these reasons, we hold that the there was competent, credible evidence to support the trial court's conclusion that the at-grade crossing in alternative one was reasonably required pursuant to the factors set forth in R.C. 4957.31. Accordingly, we hold that the trial court's conclusion giving appellee the authority to construct an at-grade crossing over appellant's railroad was not against the manifest weight of the evidence.

{¶ 36} Accordingly, appellant's first assignment of error is hereby overruled.

II

{¶ 37} In the second assignment of error, appellant argues that the trial court abused its discretion by excluding the testimony of its expert witness, George Zimmerman. We disagree.

{¶ 38} The admission or exclusion of evidence lies within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of syllabus. An abuse of discretion is more than an error of law or judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140; *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855. A trial court does not abuse its discretion by excluding expert witness testimony when a party has failed to disclose a witness in violation of discovery. See *Vinci v. Ceraolo* (1992), 79 Ohio App.3d 640, 607 N.E.2d 1079.

{¶ 39} In the case sub judice, in February 2007, the trial court issued a discovery order requiring discovery to be completed by August 6, 2007. On or about May 8, 2007, the appellee submitted interrogatories and asked the appellant to identify all witnesses and provide the subject matter of the witnesses' testimony. On August 24, 2007, the appellees filed a motion to compel discovery. On September 7, 2007, the trial court granted appellee's motion to compel discovery and ordered appellant to answer the interrogatories on or before 2:00 p.m. that same date. On April 28, 2008, at 4:00 p.m., the eve of trial, the appellant identified Zimmerman as its expert witness and provided a copy of Zimmerman's expert report to appellee by e-mail.

{¶ 40} Prior to the presentation of evidence, the court ruled as follows:

{¶ 41} "I indicated [in chambers] that my ruling would be that Mr. Zimmerman would not be allowed to testify. And of course that's not a personal decision, Mr. Zimmerman, as you know. It's simply a legal decision. I've indicated to Mr. Stephenson that the reason for that is of course because the scheduling orders of the court make it clear when experts are to be identified and I believe it would be unfair to the City of Dover to allow the testimony."

{¶ 42} Based upon the fact that the appellant violated the court's discovery orders and failed to timely identify the expert witness, the exclusion of the expert's testimony was not an abuse of discretion.

{¶ 43} Accordingly, appellant's second assignment of error is hereby overruled.

{¶ 44} The judgment of the Tuscarawas County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

HOFFMAN, P.J., and GWIN, J., concur.