[Cite as *Monea v. Lanci*, 2011-Ohio-6377.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PAUL M. MONEA, et al. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellants/Cross-Appellees | : | Hon. Julie A. Edwards, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2011CA00050 |
| KENNETH A. LANCI, et al. | : | |
| | : | |
| | : | |
| | : | |
| Defendants-Appellees/Cross-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2008CV02100

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      November 30, 2011

APPEARANCES:

For Plaintiffs-Appellants/Cross-Appellees:

JACK MORRISON, JR.
THOMAS R. HOULIHAN
150 S. Main St., Suite 110
Key Building
Akron, OH 44308-1322

For Defendants-Appellees/Cross-Appellants:

CHRISTIAN M. BATES
SCOTT R. POE
JOSEPH G. CORSARO
28039 Clemens Road
Westlake, OH 44145

*Delaney, J.*

{¶ 1} Plaintiffs/Appellants/Cross-Appellees Paul M. Monea, Brooke Monea, Blake Monea, and Nancy McCann as Trustee for the Monea Family Trust I – 1999 and Defendants/Appellees/Cross-Appellants Kenneth A. Lanci and Linda J. Lanci appeal the February 9, 2011 jury verdict and related decisions of the Stark County Court of Common Pleas.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} This case centers on the ownership and occupation of a luxury home located in Massillon, Ohio known as the "Lake House." The original owner built the home for $6,500,000 and placed the home on the market in approximately 1999. Plaintiff/Appellant/Cross-Appellee Paul Monea offered the owner $2,900,000 to purchase the home. The owner declined Paul Monea's offer and accepted the $2,200,000 purchase offer of Defendants/Appellees/Cross-Appellants Kenneth and Linda Lanci.

{¶ 3} Paul Monea instead purchased the Mike Tyson home in Southington, Ohio. As part of the purchase, Paul Monea also bought the contents of the Tyson home through the Monea Family Trust I - 1999. However, Paul Monea was still interested in the Lake House. Through Paul Monea's continued interest in the Lake House, Ken Lanci and Paul Monea became friends and engaged in business opportunities together.

{¶ 4} In October 1999, the Lancis determined it was impractical to live in Massillon and they decided to move back to their home in the Cleveland area. Both parties agree that Paul Monea and the Lancis entered into an agreement where Paul Monea would take possession of the Lake House and he and his family would reside in

the home.  The parties, however, have differing recollections as to the terms of the agreement.

{¶ 5}  Paul Monea claimed the parties entered into an oral agreement, later memorialized into a written purchase agreement drawn up by the Lancis' attorney, where the Lancis agreed to sell the Lake House to Paul Monea for $2,800,000.[1]  Per the terms of the agreement, Paul Monea stated he agreed to pay the Lancis a $1,000,000 down payment and would make monthly payments in the amount of $25,000 to the Lancis until the balance was paid.  Paul Monea did not have a copy of the written purchase agreement.

{¶ 6}  Conversely, the Lancis stated they entered into a written, five-year lease agreement with Paul Monea where Paul Monea would pay rent of $25,000 per month. The term of the lease was to end in April or May 2005.  The Lancis claimed Paul Monea paid them $1,000,000 to purchase the furniture in the Lake House.  Paul Monea denied it was his signature on the lease agreement produced by the Lancis.

{¶ 7}  Paul Monea resided in the Lake House with his minor children, Brooke and Blake Monea.  Paul Monea's adult child, Paul Monea, Jr. resided at the Lake House for at least a year while he was going through a divorce.  During the Moneas' occupation of the Lake House, Paul Monea paid for substantial improvements to the property, such as a $50,000 tree house, a $40,000 electronically controlled gate for the driveway entrance, and an additional master bedroom and bathroom suite.  He purchased furniture for the property and brought his belongings from the Mike Tyson

---

[1] As will be discussed further, Paul Monea claimed in his response to the Lancis' Motion for Summary Judgment the parties had an *oral* agreement to purchase the property.  At trial however, Paul Monea testified the parties entered into a *written* purchase agreement, but he no longer had a copy of the written agreement.

home to furnish the Lake House. Some of the property purchased by Paul Monea beyond general furnishings included two Peter Max paintings, Bobby Trendy furniture for Brooke Monea's bedroom, a grand piano for the foyer, a vintage Harley Davison for the foyer, and fitness equipment for the fitness room on the lower level of the home.

{¶ 8} John Tuggle, a general contractor and Paul Monea's friend, assisted Paul Monea with the improvements and maintenance of the Lake House property. In 1999, John Tuggle became the Trustee of the Monea Family Trust I – 1999. Paul Monea hired Nancy McCann to home school and provide additional care for his children.

{¶ 9} On September 25, 2003, Paul Monea was incarcerated to a two-year term in federal prison for tax evasion. At the time of his incarceration, Brooke Monea was 19 years old and Blake Monea was 15 or 16 years old. Brooke and Blake Monea continued to reside in the Lake House while their father was in prison. Paul Monea left his children under the supervision of Nancy McCann, John Tuggle, and the children's mother. Those individuals, however, did not reside in the Lake House with the children.

{¶ 10} The Lancis became concerned about the care of the Lake House because the Monea children were living in the home without full-time supervision. While Paul Monea was in prison, he stopped paying $25,000 per month for the Lake House. At the time of his failure to pay, $1,900,000 had been paid to the Lancis, or two-thirds of the $2,800,000 alleged purchase price.

{¶ 11} In May 2005, the Lancis filed a Complaint for Forcible Entry and Detainer in the Massillon Municipal Court. See *Kenneth A. Lanci, et al. v. Brooke Monea, et al.*, Massillon Municipal Court Case No. 2005-CVG-1384. Paul Monea was represented by counsel in the action and filed an Answer and Counterclaim. In that case, the Lancis

represented the transaction was an oral month-to-month lease. The municipal court granted a writ of restitution on May 23, 2005. The Massillon Municipal Court transferred the remaining claims of the case to the Stark County Court of Common Pleas (Case No. 2005CV01731). The case before the Stark County Court of Common Pleas was dismissed on October 25, 2005.

{¶ 12} Subsequently, Tuggle informed Brooke and Blake Monea they had 24 hours to get out of the Lake House. The children were unable to get all of their belongings out of the home within that time. The children returned the next day to retrieve more of their property. The Lancis did not perform a set out of the Moneas' property left in the Lake House, but paid Tuggle to remove the Moneas' property and put it into storage. Paul Monea, Jr. came to the Lake House with three moving trucks and removed property from the Lake House. Paul Monea stated at that time, he was estranged from his son and he should not have been permitted to remove property from the home. Ken Lanci stated he never barred the Monea children from returning to the Lake House to collect any property left in the home. The children stated they were never permitted to return to the home to retrieve their belongings. Ken Lanci testified the children never asked the Lancis for the return of their property, except in one instance where Blake Monea went into the home with Ken Lanci and Tuggle to retrieve a diamond ring he had hidden in the wall of his room. The ring could not be located.

{¶ 13} When the Lancis obtained possession of the Lake House, they found it needed repairs and cleaning. Ken Lanci contracted with Tuggle to oversee the repairs and cleaning of the Lake House.

{¶ 14} Paul Monea was released from prison in September 2005. He offered to purchase the Lake House from the Lancis for $2,600,000 but was unable to complete the purchase.

{¶ 15} On October 25, 2006, Paul Monea filed a complaint against the Lancis in *Paul M. Monea v. Kenneth A. Lanci, et al.*, Stark County Common Pleas Case No 2006CV04109. On December 12, 2006, Paul Monea was indicted by a federal grand jury for conspiracy to commit money laundering and money laundering. He was convicted and sentenced to federal prison for a term of 150 months. In his case before the Stark County Court of Common Pleas, the trial court dismissed the action because neither Paul Monea nor his counsel appeared for the final pretrial scheduled for February 13, 2007. In *Paul M. Monea v. Kenneth A. Lanci, et al.*, Stark App. No. 2007CA00071, 2007-Ohio-6791 ("*Monea I*"), this Court reversed the decision of the trial court to dismiss the case without giving Paul Monea an opportunity to defend against the dismissal. We remanded the matter to the trial court for further proceedings.

{¶ 16} On March 22, 2007, the Lancis sold the Lake House and some of its contents to Defendants-Appellees, Richard and Sheryl Roush for $2,650,000. Paul Monea contacted the Roushes in writing to demand the return of his property.

{¶ 17} Paul Monea dismissed Case No. 2006CV04109 on January 7, 2008.

{¶ 18} On April 30, 2008, Paul M. Monea, Brooke Monea, Blake Monea, and Nancy McCann as Trustee for the Monea Family Trust I – 1999 refiled their complaint for Breach of Contract, Bailment, Unjust Enrichment, and Conversion in the Stark County Court of Common Pleas under Case No. 2009CV02100. The complaint named

Kenneth A. Lanci, Linda J. Lanci, Richard R. Roush, and Sheryl L. Roush as Defendants. The Lancis counterclaimed claiming unpaid rents.

{¶ 19} The Lancis filed a Motion for Summary Judgment on January 22, 2009. After briefing by the parties, the trial court granted the Lancis' motion for summary judgment on March 23, 2009. The Moneas appealed the decision to this Court.

{¶ 20} By decision issued December 7, 2009 in *Paul M. Monea, et al. v. Kenneth A. Lanci, et al.*, Stark App. No. 2009CA00083, 2009-Ohio-6446 ("*Monea II*"), we reversed the decision of the trial court to grant summary judgment in favor of the Lancis. In their summary judgment motion, the Lancis argued the parties entered into a lease agreement for the Lake House. In opposition, the Moneas stated there were genuine issues of material fact forbearing summary judgment in favor of the Lancis. First, the Moneas argued there was an issue of material fact as to whether there was an oral land contract for the sale of the property or an oral or written rental agreement. Second, the Moneas stated there were genuine issues of material facts as to their claims for bailment, conversion, and unjust enrichment. We agreed and remanded the matter for trial.

{¶ 21} The case went to trial before a jury on January 31, 2011. The Moneas put forward their argument that the parties created an oral land contract. After reviewing the pleadings, the facts in evidence and Paul Monea's conflicting testimony there was a written purchase agreement, not an oral purchase agreement, the trial court allowed the Moneas to argue to the jury there was a real estate contract to purchase the Lake House. The trial court granted the Lancis' motion for directed verdict on the claims of

bailment and conversion by Brooke Monea and Nancy McCann, Trustee of the Monea Family Trust I – 1999.

{¶ 22} The verdict forms were sent to the jury without separate interrogatories. The jury returned a verdict in favor of the Lancis finding the parties entered into a rental agreement for the property and awarded the Lancis $405,000.00 for breach of the lease.  The jury awarded Paul Monea $750,000.00 in damages for his claim of bailment and $50,000.00 for his claim of conversion against Ken and Linda Lanci, jointly and severally.  The jury did not award damages and the trial court did not enter judgment against the Roushes.

{¶ 23} The trial court entered judgment on February 9, 2011 based upon the jury's verdict by netting the verdicts.  Accordingly, the trial court awarded judgment in favor of Paul Monea against Ken and Linda Lanci, jointly and severally, in the net amount of $395,000.00.

{¶ 24} Both parties moved for sanctions based on their respective false responses to Requests for Admissions and Interrogatories.  Around this time, Ken Lanci obtained an $18,600,000 cognovit judgment against Paul Monea in the Cuyahoga County Court of Common Pleas, Case No. CV-11-747079.  On February 3, 2011, the Lancis transferred the judgment lien to the Stark County Court of Common Pleas, Case No. 2011JG00830.

{¶ 25} The Lancis filed a motion for judgment notwithstanding the verdict on February 23, 2011.  The Lancis also moved the trial court to offset the Cuyahoga County judgment against the Stark County judgment.

{¶ 26} On March 2, 2011, the trial court denied both motions for sanctions, finding that both parties were equally fallacious in their responses to the discovery requests. The trial court further granted the motion to offset the $18,600,000 judgment lien against the $395,000 net judgment in the present case, resulting in a net judgment owed by Paul Monea to the Lancis in the amount of $18,205,000.

{¶ 27} The Moneas filed a notice of appeal on March 10, 2011. On April 5, 2011, Ken Lanci assigned a portion of the Cuyahoga County judgment to Linda Lanci. This Court remanded the case to the trial court to rule on the pending motion for judgment notwithstanding the verdict. On April 8, 2011, the trial court denied the motion for judgment notwithstanding the verdict. We ordered that the Moneas' appeal was considered filed after the trial court's April 8, 2011 decision. The Lancis filed a cross appeal on April 7, 2011.

## ASSIGNMENTS OF ERROR

{¶ 28} The Moneas raise five Assignments of Error:

{¶ 29} "I. THE COURT OF COMMON PLEAS ERRED BY VIOLATING THE LAW OF THE CASE DOCTRINE AND RULING THAT OHIO LAW DOES NOT PERMIT AN ORAL LAND CONTRACT.

{¶ 30} "II. THE COURT OF COMMON PLEAS ERRED BY GRANTING DIRECTED VERDICT AGAINST THE CLAIMS OF BROOKE MONEA AND THE MONEA FAMILY TRUST, I – 1999.

{¶ 31} "III. THE COURT OF COMMON PLEAS ERRED BY REFUSING TO GRANT APPELLANTS' MOTION FOR SANCTIONS CONCERNING THE FALSE ANSWERS TO REQUESTS FOR ADMISSION.

{¶ 32} "IV. THE COURT OF COMMON PLEAS ERRED BY OFFSETTING A NON-MUTUAL JUDGMENT.

{¶ 33} "V. THE COURT OF COMMON PLEAS ERRED BY REFUSING TO ALLOW APPELLANTS TO CALL A REBUTTAL WITNESS AT TRIAL."

{¶ 34} The Lancis raise four Assignments of Error in their Cross Appeal:

{¶ 35} "I. THERE IS NO COMPETENT, CREDIBLE EVIDENCE TO SUPPORT A JUDGMENT AGAINST LANCI, AND THEREFORE THE TRIAL COURT ERRED IN DENYING LANCI'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT. IN THE ALTERNATIVE, THE JURY'S VERDICT AGAINST LANCI ON MONEA'S BAILMENT AND CONVERSION CLAIMS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 36} "II. THE TRIAL COURT ERRED IN NOT DISMISSING THE CLAIMS AGAINST MRS. LANCI UPON THE MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.  IN THE ALTERNATIVE, THE JURY'S VERDICT AGAINST MRS. LANCI IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 37} "III. THE TRIAL COURT ERRED BY UPHOLDING THE AWARD OF DAMAGES TO MONEA ON BOTH BAILMENT AND CONVERSION THEORIES.

{¶ 38} "IV. THE TRIAL COURT ERRED IN DENYING LANCI'S MOTION FOR SANCTIONS."

**Moneas' Assignment of Error I.**

{¶ 39} The Moneas' first Assignment of Error regards their original claim that the parties entered into an oral land contract and the Lancis were in breach of the oral land contract.  The Moneas state the trial court ignored the law of the case by not allowing

them to present evidence at trial and jury instructions regarding an oral land contract. Based on the record, we find no error.

{¶ 40} In the Moneas' complaint, the Moneas alleged breach of contract against the Lancis in regards to the Lake House. The Moneas stated the Lancis agreed to sell the Lake House to Paul Monea and when he no longer made the required monthly payments, the Lancis evicted the Moneas from the Lake House, rather than foreclosing on the property as required by R.C. 5313.07. R.C. 5313.07 governs land installment contracts and provides:

{¶ 41} "If the vendee of a land installment contract has paid in accordance with the terms of the contract for a period of five years or more from the date of the first payment or has paid toward the purchase price a total sum equal to or in excess of twenty per cent thereof, the vendor may recover possession of his property only by use of a proceeding for foreclosure and judicial sale of the foreclosed property as provided in section 2323.07 of the Revised Code."

{¶ 42} R.C. 5313.01 states:

{¶ 43} " 'Land installment contract' means an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligations. Option contracts for the purchase of real property are not land installment contracts."

{¶ 44} It was the Moneas legal theory that Paul Monea should have been afforded the protections of R.C. 5313.07, such that the equity he invested in the Lake House would be preserved through the foreclosure process. As such, it was the Moneas' theory of damages that Paul Monea's lost equity in the Lake House could be calculated by taking the amount the Roushes paid to the Lancis for the Lake House and subtracting the amount Paul Monea still owed to the Lancis under the contract.

{¶ 45} On January 23, 2009, the Lancis filed their motion for summary judgment stating there was no genuine issue of material fact that the parties entered into a lease agreement for possession of the Lake House and Paul Monea was in breach of the lease agreement. Paul Monea opposed the motion for summary judgment, arguing there was a genuine issue of material fact as to the type of agreement the parties entered into. Paul Monea submitted through affidavit he entered into an oral land contract agreement with the Lancis obligating the Lancis to foreclose on the property, rather than executing an eviction.

{¶ 46} The trial court conceded a genuine issue of material fact existed as to whether there was a written lease agreement between the parties; therefore, the trial court analyzed the motion for summary judgment in a light most favorable to the non-moving party, the Moneas, and examined whether there was a breach of an oral land contract. As Paul Monea argued the parties entered into an oral land contract, it was necessary for the trial court to determine the impact of the Statute of Frauds on the validity of an oral land contract. The trial court utilized the doctrine of partial performance to determine whether the alleged verbal agreement for this real estate transaction removed the parties' contract from the Statute of Frauds. The trial court

found there was no genuine issue of material fact that Paul Monea had not partially performed the contract based on Paul Monea's description of some of the check payments made to the Lancis as "rent" or "lease", therefore the oral land contract failed to satisfy the Statute of Frauds and was unenforceable.

{¶ 47} The Moneas appealed the decision to this Court. Upon our de novo review, we found in *Monea II* the Civ.R. 56 evidence showed genuine issues of material fact on multiple issues preventing the granting of summary judgment in favor of the Lancis. The issue presented to this Court on appeal, and specific to the Moneas' first Assignment of Error in the present case, was whether there was either an oral land contract for the sale of the property or an oral or written rental agreement. We stated:

{¶ 48} "We reverse the trial court's judgment on [the issue of whether there was either an oral land contract for the sale of the property or an oral or written rental agreement] because we conclude (1) there is a genuine issue of material fact as to whether the $1,000,000 paid by appellant to Lanci in 1999 was a down payment for the purchase of the premises; and (2) there is a genuine issue of material fact as to whether Landis was [sic] obligated to foreclose upon appellant's interest in the property pursuant to R.C. Chapter 5313 in order to remove appellant from the subject premises." *Monea II*, supra, at ¶18.

{¶ 49} As is well settled in Ohio law, the Statute of Frauds requires that a real estate contract be in writing. R.C. 1335.05 sets forth the "Statute of Frauds" and states:

{¶ 50} "No action shall be brought whereby to charge the defendant * * * upon a contract for sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the

making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

{¶ 51} In finding there was a genuine issue of material fact as to whether an oral land contract existed in *Monea II,* we referred to the doctrine of partial performance to demonstrate an exception to the requirements of the Statute of Frauds. The doctrine of partial performance states:

{¶ 52} "Ohio courts generally consider the following factors to be relevant in determining the applicability of the part performance doctrine: (1) evidence of a change in possession; (2) payment of all or part of the consideration for the land; and, (3) improvements, alterations or repairs upon the land by the possessor. Id. at ¶ 29. Neither mere possession of the real property, nor payment of consideration is by itself sufficient to avoid the applicability of the statute of frauds. *Tier v. Singrey* (1951), 154 Ohio St. 521, 526, 97 N.E.2d 20; *Snyder v. Warde* (1949), 151 Ohio St.3d 426, 434 (1949); *Crabill v. Marsh* (1882), 38 Ohio St. 331, 338." *Monea II*, supra, at ¶21.

{¶ 53} We analyzed the Civ.R. 56 evidence before the Court and found genuine issues of material fact existed as to whether the actions by Paul Monea in this case met the requirements of the doctrine of partial performance.

{¶ 54} Our ultimate holding in the case was therefore two-fold: (1) whether there existed an oral land contract, written lease agreement, or oral lease agreement, and (2) if there existed an oral land contract, was there partial performance to make an exception within the Statute of Frauds rendering the oral land contract enforceable. The case was remanded to the trial court to resolve those issues of fact.

{¶ 55} Paul Monea's discovery deposition in preparation for trial was taken January 6, 2011. In his deposition, he testified that he entered into a written purchase agreement with the Lancis for the Lake House. (Paul Monea Depo., p. 8). Paul Monea alleged he no longer possessed the document because it was taken from the Lake House. (Paul Monea Depo., p. 9). When questioned about the discrepancy between his affidavit in support of his summary judgment motion where he stated there was an oral agreement to sell the property and his deposition testimony stating there was a written agreement, Paul Monea stated he did not know why he did not advise the court of the written agreement. (Paul Monea Depo., p. 11).

{¶ 56} Because Paul Monea was incarcerated during the trial, his trial testimony was taken on January 27, 2011. He again testified he entered into a written agreement with the Lancis for the purchase of the Lake House. (Paul Monea Trial Depo., p. 13). Paul Monea stated the Lancis composed the written agreement. (Paul Monea Trial Depo., p. 14).

{¶ 57} The trial in this matter commenced on January 31, 2011. Before trial, the trial court addressed its concerns with Moneas' counsel about Paul Monea's conflicting testimony as to whether the agreement was oral or written. The judge told Moneas' counsel that Paul Monea's testimony that the purchase agreement was written was "diametrically opposite what everybody has premised this case on and diametrically opposite to what you stood in front of the Fifth District Court of Appeals and argued in both your brief and in your oral argument." (Vol. I, p. 19-22).

{¶ 58} The Moneas' counsel then addressed its proposed jury instructions on an oral land contract. (Vol. I, p. 22). The trial court stated to counsel that an oral land

installment contract was not permitted by law and it was not going to permit any testimony on an oral land installment contract. (Vol. I, p. 23-24). However, the trial court did allow the Moneas to proceed under a theory of "oral contract for the purchase of real estate, despite Paul Monea's inconsistent testimony.

{¶ 59} In *Hopkins v. Dyer,* 104 Ohio St.3d 461, 820 N.E.2d 329, 2004-Ohio-6769, the Ohio Supreme Court discussed the law of the case doctrine and stated as follows:

{¶ 60} "The law of the case is a longstanding doctrine in Ohio jurisprudence. '[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' *Nolan v. Nolan,* 11 Ohio St.3d at 3, 11 OBR 1, 462 N.E.2d 410. The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. *State ex rel. Potain v. Mathews* (1979), 59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391 N.E.2d 343." *Hopkins,* ¶ 15.

{¶ 61} The evidence presented in this case demonstrates the trial court did not fail to follow the law established in *Monea II*. *Monea II* was based on Paul Monea's affidavit testimony stating he entered into an oral land contract with the Lancis. We found on this evidence there was a genuine issue of material fact whether there was an oral land contract and if so, there was a further question whether there was partial performance to remove the oral land contract from the requirements of the Statute of Frauds.

{¶ 62} The record shows the trial court permitted the Moneas to present evidence the parties entered into an oral or written agreement to purchase real estate. Further,

the Lancis and Roushes moved the trial court to dismiss the breach of contract claim at the conclusion of trial. The trial court denied the motion, stating that evidence was presented that there may have been an oral or written contract for the purchase of real estate and the law permits an oral contract for the purchase of real estate if there had been partial performance. (Vol. II, p. 147).

{¶ 63} The Moneas also argue they were not permitted to pursue their land installment contract theory of damages that the Moneas were entitled to lost equity in the Lake House by calculating the amount that the Roushes paid to the Lancis for the Lake House, subtracting the amount that Monea still owed to the Lancis under the contract. The trial court instructed the jury on the Moneas' claim for "Breach of Contract for Sale of Real Estate." The instructions stated as to damages: "If you find by the great weight of the evidence that Lanci breached the contract, Monea is entitled to recover the amount of damages necessary to place him in the same position as if the contract had not been made. These damages include expenditures made in preparation for performance or in performance of the contract."

{¶ 64} We find the Moneas suffered no prejudice from the trial court's determination that the Moneas could not proceed under the legal theory of an oral land installment contract. The trial court's decision to permit the Moneas to proceed under the theory of an oral or written agreement to purchase real estate is supported by the record and not in contravention of our decision in *Monea II*.

{¶ 65} The Moneas' first Assignment of Error is overruled.

**Moneas' Assignment of Error II.**

{¶ 66} The Moneas argue in their second Assignment of Error that the trial court erred in granting a directed verdict to dismiss the claims of conversion and bailment brought by Brooke Monea and the Trustee of the Monea Family Trust, I -1999. We disagree.

{¶ 67} In the complaint, Paul, Brooke, and Blake Monea and Nancy McCann as Trustee of the Monea Family Trust, I – 1999, alleged causes of action for bailment and conversion. The Lancis and Roushes moved for directed verdict at the close of the Moneas' case on those claims, but the trial court denied the motion at that time. (Vol. I, p. 275). The parties renewed their motion for directed verdict at the conclusion of the evidence. (Vol. II, p. 142). The parties agreed that Blake Monea did not testify and should be dismissed from the case. (Vol. II, p. 143). The trial court granted the motion for directed verdict as to Brooke Monea and the Trustee. (Vol. II, p. 144). The trial court stated that Brooke Monea testified that she had a bedroom set but did not indicate that she purchased it. (Vol. II, p. 145). The testimony showed that Paul Monea purchased the bedroom furniture for his daughter. Id. The trial court further found no evidence was presented that Brooke Monea ever requested that her belongings be returned to her or provided a value of the alleged converted items. Id. As to the Trustee, the trial court granted the motion for directed verdict because it found there was no substantial probative evidence to support the Trustee's claims that the trust owned property in the home. (Vol. II, p. 144).

{¶ 68} A trial court can grant a motion for a directed verdict only after finding that reasonable minds could reach but one conclusion on any determinative issue and that

conclusion is adverse to the party opposing the motion.  Civ.R. 50(A)(4).  This "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the non-moving party. *Akers v. Saulsbury,* 5th Dist. No.2008–CAE–12–0070, 2010–Ohio–4965, ¶10.  Under a motion for directed verdict pursuant to Civ.R. 50, the trial court is not the trier of fact and does not weigh the evidence.  *Whitestone Co. v. Stittsworth,* Franklin App. No. 06AP-371, 2007-Ohio-233, at ¶11.  The trial court must construe the evidence most strongly in favor of the party against whom the motion is made and neither weigh the evidence nor determine the credibility of the witnesses in ruling upon a motion.  Id.  Our review of the trial court's disposition of the motion is de novo because a motion for directed verdict tests the legal sufficiency of the evidence to go to the jury.  Id.

{¶ 69} Our review of the sufficiency of the evidence as to the claims for conversion and bailment shows no error by the trial court to grant the motion for directed verdict as to Brooke Monea and the Trustee of the Monea Family Trust, I - 1999.

{¶ 70} The tort of conversion is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights."  *Heflin v. Ossman,* Fairfield App. No. 05CA17, 2005-Ohio-6876, ¶20, quoting *Joyce v. General Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172.  In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property and (2) that the possessor refused to deliver the property to its rightful owner.  *Taber v. Charlie's*

*Towing Service, Inc.* (1994) 97 Ohio App.3d 423, 427, 646 N.E.2d 1132, citations omitted. "The measure of damages in a conversion action is the value of the converted property at the time it was converted." *Congress Lake Club v. Witte,* Stark App. No. 2007CA00191, 2008-Ohio-6799, ¶ 66.

{¶ 71} A review of the evidence shows Brooke Monea and the Trustee for the Monea Family Trust, I – 1999 failed to establish the elements necessary for the intentional tort of conversion. Brooke Monea failed to establish (1) she was the owner of the property in that her father purchased it; (2) she demanded the return of the property; and (3) the value of the property at the time it was allegedly converted. The same factors are applicable to the property allegedly owned by the Monea Family Trust, I -1999.

{¶ 72} The Moneas stated in their complaint a gratuitous bailment occurred when the Lancis and Roushes took possession of the Moneas' property after the eviction. A bailment involves the transfer of a possessory interest only and not an ownership interest in property; possession alone is transferred, and ownership remains in the bailor. 8 Ohio Jurisprudence 3d (2011), Bailments §2. A bailment can be created by contract and can be for the benefit of the bailor, bailee, or for the mutual benefit of both. A gratuitous bailment is one in which the transfer of possession or use of the bailed property is without compensation. 8 Ohio Jurisprudence 3d (2011), Bailments §7.

{¶ 73} Again, the same issue preventing judgment for Brook Monea and Trustee for the Monea Family Trust, I – 1999 on the conversion claim (lack of ownership) is present on their claims for bailment. Reviewing the evidence in a light most favorable to

the non-moving parties, we find that the evidence does not support the claims they were owners of the alleged property, not Paul Monea.

{¶ 74} The Moneas' second Assignment of Error is overruled.

**Lancis' Cross-Assignment of Error I., II., III.**

{¶ 75} We address the Lancis' first, second, and third Cross-Assignments of Error next because they also refer to the jury's decision on the Lancis' liability for conversion and bailment.

{¶ 76} Paul Monea brought a conversion and bailment claim against Ken and Linda Lanci. The jury found in favor of Paul Monea on his claims for bailment and conversion, awarding Paul Monea $50,000 on his claim for conversion and $750,000 for his claim of bailment. The Lancis filed a Motion for Judgment Notwithstanding the Verdict on February 23, 2011. In their motion, the Lancis argued the motion was warranted because the evidence in the record could only lead to one conclusion, being that: (a) no bailment existed under Ohio law because the property was abandoned; (b) the Lancis were not grossly negligent in regard to the personal property at issue; (c) the evidence in the record does not support the award of damages to Paul Monea; and (d) there was no evidence in the record that would allow the jury to find Linda Lanci liable to Paul Monea. On April 8, 2011, the trial court denied the motion.

{¶ 77} In the Lancis' first, second, and third Cross-Assignments of Error, they argue the trial court erred in denying the motion for judgment notwithstanding the verdict, or in the alternative, the judgment was against the manifest weight of the evidence. The Lancis raise the same errors as listed in the paragraph above.

{¶ 78} When ruling on a motion for judgment notwithstanding the verdict, a trial court applies the same test as in reviewing a motion for a directed verdict. *Ronske v. Heil Co.,* Stark App. No. 2006-CA-00168, 2007-Ohio-5417. See also, *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511. "A motion for judgment notwithstanding the verdict is used to determine only one issue i.e., whether the evidence is totally insufficient to support the verdict." *Krauss v. Streamo,* Stark App. No.2001 CA00341, 2002–Ohio–4715, paragraph 14. See, also, *McLeod v. Mt. Sinai Medical Center* (2006), 166 Ohio App.3d 647, 853 N.E.2d 1235, reversed on other grounds, 116 Ohio St.3d 139, 876 N.E.2d 1201. Neither the weight of the evidence nor the credibility of the witnesses is a proper consideration for the court. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334. See, also, Civ.R. 50(B); and *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 504 N.E.2d 19. In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. *Osler,* supra. Our review of the trial court's disposition is de novo.

{¶ 79} Paul Monea argued to the jury a gratuitous bailment was created between Paul Monea and the Lancis when the Lancis evicted the Moneas and took possession of the Lake House and the property in the Lake House belonging to Paul Monea. A bailment involves the transfer of a possessory interest only and not an ownership interest in property; possession alone is transferred, and ownership remains in the bailor. 8 Ohio Jurisprudence 3d (2011), Bailments §2. The bailor in this case is Paul Monea; the bailees are the Lancis. A bailment can be created by contract and can be

for the benefit of the bailor, bailee, or for the mutual benefit of both. A gratuitous bailment is one in which the transfer of possession or use of the bailed property is without compensation. 8 Ohio Jurisprudence 3d (2011), Bailments §7. A gratuitous bailee is a bailee "who will receive nothing from the owner of the property and will have no right to recover from such owner anything for what he does in caring for such property * * *." *United States Fire Ins. Co. v. Paramount Fur Service, Inc.* (1959), 168 Ohio St. 431, 437, 156 N.E.2d 121, 126.

{¶ 80} The Lancis state that the evidence at trial was insufficient to show a gratuitous bailment was created because the evidence presented was that Paul Monea abandoned the property. The trial court instructed the jury if Paul Monea abandoned the property, the claims by Paul Monea for bailment must fail. The jury was further instructed on "abandonment" as follows:

{¶ 81} "Abandonment means a voluntary relinquishment of the possession of a thing by the owner with the intention of terminating his ownership, but without vesting title to the property in any other person.

{¶ 82} "The jury is instructed that abandonment of personal property, being an unconditional, intentional, and voluntary relinquishment, is always determined by looking to all the circumstances of the case and by considering the acts and declarations of the one who resists the claim of forfeiture. There can be no abandonment without an intention to yield possession, neither non-use of the property, or right in question, nor the lapse of any particular time since dominion over it was exercised is conclusive of the claim of abandonment, but such fact may be considered by the jury along with all other facts in the case in deciding the question of

abandonment and intention of the person resisting the claim, you may consider all facts in evidence to determine if the property was abandoned."

{¶ 83} Our review of the record finds there was sufficient evidence for the jury to determine Paul Monea did not abandon his personal property and a gratuitous bailment was created.

{¶ 84} The jury found the parties entered into a lease agreement for the Lake House. As part of the lease agreement, the Lancis stated Paul Monea paid them $1,000,000 to purchase the contents of the home.

{¶ 85} The Lancis prevailed on the forcible entry and detainer action to regain possession of the Lake House. Ken Lanci admitted he did not pursue a writ of execution pursuant to R.C. 1923.14 to remove the Moneas' personal property from the Lake House. (Vol. II, p. 101). In *Ringler v. Sias* (1980), 68 Ohio App.2d 230, 428 N.E.2d 869, paragraph one of syllabus, the Tenth District Court of Appeals held, "[w]here a deputy sheriff, who is enforcing a writ of execution pursuant to R.C. 1923.14, removes a tenant's personal property from the rental building and places the personal property outside, on open land owned by the landlord, the landlord does not become a gratuitous bailee of the tenant's personal property, *unless the landlord takes some act that is consistent with an intent to possess the former tenant's property*." (Emphasis added).

{¶ 86} The parties gave conflicting testimony on whether the Moneas were able to remove their property from the home. The Lancis testified the Moneas were given unfettered access to the home to remove the property. Brooke Monea testified she was

given 24 hours to get out of the home with her belongings.  The Lancis sold the Lake House and some of its contents to the Roushes.  (Vol. I, p. 124).

{¶ 87} This evidence taken as a whole is sufficient to support the jury's verdict as to gratuitous bailment, rather than abandonment.

{¶ 88} The Lancis next argue that assuming a gratuitous bailment was created, the evidence did not support the verdict that the Lancis actions in regards to the Moneas' property were grossly negligent.  A gratuitous bailee owes no duty of ordinary care to protect the bailed property.  The law will hold a gratuitous bailee liable only for losses arising from gross negligence.  Id.  The Ohio Supreme Court has defined gross negligence as follows:  "An early Ohio Supreme Court case defined 'gross negligence' as the 'failure to exercise any or very slight care.' *Johnson v. State* (1902), 66 Ohio St. 59, 67, 63 N.E. 607, 609.  See, also, *Cleveland, C., C. & I. Ry. Co. v. Elliott* (1876), 28 Ohio St. 340, 356–357; *Payne v. Vance* (1921), 103 Ohio St. 59, 133 N.E. 85.  Prosser states that gross negligence 'has been described as a failure to exercise even that care which a careless person would use.'  Prosser & Keeton, Law of Torts (5 Ed.1984) 212, Section 34."  *Thompson Elec. v. Bank One, Akron, N.A.* (1988), 37 Ohio St.3d 259, 265,525 N.E.2d 761.

{¶ 89} The record in this case is not insufficient to support the verdict of gross negligence.  The Lancis hired Tuggle to remove the Moneas' property from the home and put it in storage.  Brooke Monea gained access to the storage unit.  She testified, "[e]verything was thrown in there piled to the ceiling in a completely unorganized manner and whatever was in there was ruined, it was broken and unusable."  (Vol. I, p.

250). Brooke Monea had left multiple items of clothing in the home but there was only a small box of her clothing in the storage unit. (Id. at p. 251).

{¶ 90} The Lancis argue in their third Assignment of Error the damages verdict for both bailment and conversion is neither supported by law, nor is the amount of the damages supported by the evidence. We disagree.

{¶ 91} The Lancis first state you cannot be awarded damages for both bailment and conversion. Paul Monea's complaint alleged claims for relief on the theories of bailment and conversion. At trial, the evidence established the Lancis evicted the Moneas and did not immediately return the Moneas' property in the Lake House to the Moneas. When the Moneas retrieved their property in the storage unit obtained by the Lancis, the Moneas observed it was damaged. This is a case of bailment. *Parrish v. Machlan* (1997), 131 Ohio App.3d 291, 722 N.E.2d 529 citing *David v. Lose* (1966), 7 Ohio St.2d 97, 218 N.E.2d 442, paragraph one of the syllabus. The negligence of a bailee in caring for bailed property is not a conversion. *United States Fire Ins. Co. v. Paramount Fur Serv., Inc.* (1959), 168 Ohio St. 431, 156 N.E.2d 121, paragraph two of the syllabus. The jury also found for Paul Monea on his claim for conversion alleging the Lancis failed to release Paul Monea's personal property after Paul Monea demanded its return. The Lancis did not move for judgment notwithstanding the verdict on the jury's determination the Lancis were liable for conversion, nor have they appealed that issue. Thus, since both theories were pleaded and proved, the jury's verdict was entirely appropriate and not duplicative. See *Parrish*, supra.

{¶ 92} The Lancis next argue the damages award was not supported by the evidence. A judgment supported by some competent, credible evidence will not be

reversed as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. A reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate conclusions. *Hooten Equipment Co. v. Trimat, Inc.,* Gallia App. No. 03CA16, 2004-Ohio-1128, ¶ 7. We are to defer to the findings of the trier of fact because the trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. *Seasons Coal Company, Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748.

{¶ 93} Paul Monea testified as to the value of the property he alleged was converted or subject to a bailment by the Lancis. Paul Monea submitted an inventory list of the property he claimed was kept by the Lancis. The inventory list included Paul Monea's valuation of the items and it was approximately $1,000,000. (Paul Monea Depo., p. 87). On cross-examination, he admitted that he did not have appraisals done on his property. (Paul Monea Trial Depo., p. 86). The jury valued Paul Monea's damages for bailment to be $750,000 and the damages for conversion to be $50,000. Neither party submitted interrogatories to the jury.

{¶ 94} Based on the evidence presented, we cannot say there was no competent, credible evidence to determine the valuation of the damages on the claims

for conversion and bailment.  The parties did not provide jury interrogatories to test the jury's verdict.

{¶ 95} We finally address the Lancis' argument there is no evidence in the record that Linda Lanci is liable to Paul Monea for bailment or conversion.  The trial court also addressed this question at trial and did not dismiss Linda Lanci from the proceedings. (Vol. I, p. 279).

{¶ 96} It is undisputed Linda Lanci was owner of the Lake House with her husband, Ken Lanci.  Linda Lanci was named as plaintiff in the eviction proceedings against the Moneas.  Linda Lanci testified she deferred to her husband as to financial issues.  (Vol. I, p. 156).

{¶ 97} As part owner of the Lake House and a participant in the eviction proceedings that led to the bailment and conversion claims, we find no error to deny the motion to dismiss Linda Lanci from the proceedings.

{¶ 98} The Lancis' first, second, and third Cross-Assignments of Error are overruled.

**Moneas' Assignment of Error III. / Lancis' Cross-Assignment of Error IV.**

{¶ 99} We address the Moneas' third Assignment of Error and the Lancis' fourth Cross-Assignment of Error together because they address the same issue.  Both parties moved for sanctions pursuant to R.C. 2323.51, Civ.R. 37(C), and Civ.R. 11 based on false answers to Requests for Admission.  On March 2, 2011, the trial court denied the motions of each party, finding that "both parties, at a minimum, violated both the spirit and the letter of the Civil Rules of Civil Procedure.  Both parties are guilty of discovery

abuses. The Court finds, therefore, that any motion for discovery sanctions is herein denied."

{¶ 100}    A trial court's decision to impose sanctions will not be reversed absent an abuse of discretion. *State ex rel. Fant v. Sykes* (1987), 29 Ohio St.3d 65; *Kemp, Schaeffer & Rowe Co., L .P.A. v. Wrecker* (1990), 70 Ohio App.3d 493; *Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166. An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217. We must look to the totality of the circumstances to determine whether the trial court acted unreasonably, arbitrarily or unconscionably.

{¶ 101}    A review of the record in this case shows the trial court did not abuse its discretion in denying sanctions for both parties. At trial, both parties admitted they falsely responded to the Requests for Admission. The trial court was within its discretion to deny sanctions for either party under the circumstances of the present case.

{¶ 102}    The Moneas' third Assignment of Error is overruled. The Lancis' fourth Cross-Assignment of Error is overruled.

### Moneas' Assignment of Error IV.

{¶ 103}    After the verdict was rendered in the present case, Ken Lanci obtained an $18,600,000 cognovit judgment against Paul Monea in the Cuyahoga County Court of Common Pleas, Case No. CV-11-747079. On February 3, 2011, Ken Lanci transferred the judgment lien to the Stark County Court of Common Pleas, Case No. 2011JG00830. The Lancis moved to offset the Cuyahoga County judgment against

the judgment in the present case. On March 2, 2011, the trial court granted the motion to offset the $18,600,000 judgment lien against the $395,000 net judgment in the present case, resulting in a net judgment owed by Paul Monea to the Lancis in the amount of $18,205,000. The Moneas argue in their fourth Assignment of Error the offset was in error.

{¶ 104}     A set-off, whether legal or equitable, must relate to cross demands in the same right and where there is mutuality of obligation. The debts must be to and from the same persons and in the same capacity. *Nichols v. Metropolitan Life Insurance Company* (1941), 137 Ohio St. 542, 31 N.E.2d 224, quoting *Andrews v. State ex rel. Blair, Superintendent of Banks,* 124 Ohio St. 348, 178 N.E. 581. A question of whether one judgment may be set off against another is addressed to the trial court's discretion, exercised in accord with sound principles of the equity and jurisprudence. *Montalto v. Yeckley* (1944), 143 Ohio St. 181, 54 N.E.2d 421.

{¶ 105}     The Moneas argue the offset was in error because there is no mutuality of obligation. The judgment obtained by Paul Monea in this case was against Ken and Linda Lanci, jointly and severally. The Cuyahoga County judgment was obtained by Ken Lanci, individually, against Paul Monea.

{¶ 106}     On April 5, 2011, Ken Lanci assigned a portion of the Cuyahoga County judgment to Linda Lanci. The Moneas argue this Court cannot consider the assignment of the Cuyahoga County judgment to the issue of mutuality of obligation because the assignment was not before the trial court when it made its decision on March 2, 2011 to offset the judgment.

{¶ 107}     The trial court did not rule on the motion for judgment notwithstanding the verdict until April 8, 2011 and by our order, the appeal was perfected on April 8, 2011.  We consider the entire record before us, including the April 5, 2011 assignment of the Cuyahoga County judgment.  We find the Moneas' argument is rendered moot by the assignment and the offset of the judgment to be proper under these circumstances.

{¶ 108}     The Moneas' fourth Assignment of Error is overruled.

**Moneas' Assignment of Error V.**

{¶ 109}     In their final Assignment of Error, the Moneas argue the trial court abused its discretion in denying the Moneas the opportunity to call a rebuttal witness at trial.  The Moneas contend the trial court should have permitted the Moneas to call a handwriting expert to rebut the testimony of Ken Lanci who stated he witnessed Paul Monea sign the lease to the Lake House.  The expert witness was not identified pursuant to the trial court's discovery order nor did the expert issue an expert report. (Vol. I, p. 17).

{¶ 110}     The admission or exclusion of evidence lies within the sound discretion of the trial court.  *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of syllabus.  An abuse of discretion is more than an error of law or judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court.  *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140; *Steiner v. Custer* (1940), 137 Ohio St. 448, 31 N.E.2d 855.  A trial court does not abuse its discretion by excluding expert witness testimony when a party has failed to disclose a witness in violation of discovery.  *City of Dover v. R.J. Corman RR. Co.*

*Cleveland Line*, 181 Ohio App.3d 31, 2009-Ohio-562, 907 N.E.2d 1198, at ¶ 38 citing

*Vinci v. Ceraolo* (1992), 79 Ohio App.3d 640, 607 N.E.2d 1079.

{¶ 111} The Moneas consulted the handwriting expert early in the litigation (Moneas' Brief, p. 22), but did not have the expert prepare a report because they did not believe that Ken Lanci would testify that he witnessed Paul Monea sign the lease. (Vol. I, p. 16). The trial court recollected there was an affidavit from Paul Monea, Jr. stating it was his father's signature on the lease. (Vol. I, p. 15).

{¶ 112} We find no abuse of discretion in the trial court's decision to exclude the rebuttal testimony of the Moneas' handwriting expert for failure to comply with the trial court's discovery orders. The Moneas obtained the expert early in the litigation process, the Moneas were aware there were allegations a written lease existed, and there was affidavit evidence from Paul Monea, Jr. stating he recognized Paul Monea's signature on the lease.

{¶ 113} The Moneas' fifth Assignment of Error is overruled.

{¶ 114}    In summary, the Assignments of Error of the Moneas and the Lancis are overruled.  The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.

Gwin, P.J. and

Edwards, J. concur.

 

_____
HON. PATRICIA A. DELANEY

 

_____
HON. W. SCOTT GWIN

 

_____
HON. JULIE A. EDWARDS

[Cite as *Monea v. Lanci*, 2011-Ohio-6377.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PAUL M. MONEA, et al. | : | |
| | : | |
| | : | |
| Plaintiffs-Appellants/Cross-Appellees | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| KENNETH A. LANCI, et al. | : | |
| | : | |
| | : | Case No. 2011CA00050 |
| Defendants-Appellees/Cross-Appellants | : | |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs split and assessed equally between the parties.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JULIE A. EDWARDS